**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES GLAVAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> REVOLUTION LIGHTING TECHNOLOGIES, INC., ROBERT V. LAPENTA, CHARLES J. SCHAFER, and JAMES A. DEPALMA, <br><br> Defendants. | **CASE No.: 1:19-cv-00980-JPO** <br><br> **MEMORANDUM OF LAW OF PATRICK AND WENDY GRAHAM IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** <br><br> **CLASS ACTION** |
| CHRIS HUBNER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> REVOLUTION LIGHTING TECHNOLOGIES, INC., ROBERT V. LAPENTA, CHARLES J. SCHAFER, and JAMES A. DEPALMA, <br><br> Defendants. | **CASE No.: 1:19-cv-02308-JPO** <br><br> **CLASS ACTION** |

*Captions Continue on Following Page*

| | |
|---|---|
| BOB BISHOP, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> REVOLUTION LIGHTING TECHNOLOGIES, INC., ROBERT V. LAPENTA, CHARLES J. SCHAFER, and JAMES A. DEPALMA, <br><br> Defendants. | **CASE No.: 1:19-cv-02722-JPO** <br><br> <u>**CLASS ACTION**</u> |

Before the Court are several competing motions for appointment of lead plaintiff and lead counsel.[1] While one movant, Fred Remer ("Remer") claims a larger loss than Patrick and Wendy Graham (the "Grahams"), Remer does not have the requisite *largest* financial interest as delineated under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rather, while Remer purports to present his losses under a Last-in-First-Out ("LIFO") basis in his loss chart, his LIFO losses are only $817,948.68. Moreover, his LIFO losses are even less if the Court discounts any losses on shares sold prior to a partial or fully corrective disclosure.[2] *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

In contrast, the Grahams, a married couple with substantial investing experience, have the largest financial interest pursuant to the PSLRA. The Grahams lost $830,428.82 on their purchases of Revolution Lighting Technologies, Inc. ("Revolution Lighting" or the "Company")

---

[1] On April 12, 2019, Chris Hubner filed a non-opposition to the other competing motions. (Dkt. No. 30). Also on April 12, 2019, Craig Holman and Russell Hopewell withdrew their motion. (Dkt. No. 31).

[2] The corrective disclosure variously alleged in these actions occurred on September 22, 2017, August 2, 2018, October 17, 2018, October 19, 2018, and November 14, 2018.

securities and purchased the most net shares. In short, the Grahams are the presumptive Lead Plaintiffs as they have the largest financial interest and have made *prima facie* showing of adequacy and typicality. Accordingly, their motion should be granted in its entirety and the competing motions should be denied.

## ARGUMENT

### I.   THE GRAHAMS SHOULD BE APPOINTED LEAD PLAINTIFFS

#### A.  Remer Inflates His Losses; The Grahams Have the Largest Financial Interest

While Remer claims losses over $1.3 million, his claimed losses are inflated on several levels. Courts in this District and elsewhere prefer to consider losses on a LIFO basis. *In re eSpeed, Inc. Sec. Litig.*, 93 F. Supp.3d 96, 101, 102 (S.D.N.Y. 2005); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) ("courts in this district and others have stated a preference for LIFO over FIFO [first-in-first-out] in assessing loss for purposes of the appointment of lead plaintiff."). LIFO means shares purchased last during a class period are matched to shares that are sold first. *Bo Young Cha v. Kinross Gold Corp.*, No. 12 CIV. 1203 PAE, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012).

Although Remer claims to have calculated his loss on a LIFO basis, his calculations are incorrect. When matching his last shares purchased to his first sales, Remer's losses are only $817,948.68—less than the Grahams' LIFO losses of $830,428.82.[3] *See* Remer's recalculated trades, attached hereto as Exhibit 1.

Additionally, Remer's LIFO losses should be further reduced as he included losses on shares that he sold prior to a partially or fully corrective disclosure.[4] *See Dura*, 544 U.S. at 342

---

[3] Since the Grahams did not sell their shares, their LIFO and FIFO losses are the same.

[4] The burden is on Remer to present his losses in proper form excluding "in and out" losses. Given that Remer's losses are less than the Grahams' losses prior to discounting his losses, the Grahams have not submitted herewith an analysis of Remer's LIFO losses excluding "in and out" losses.

2

("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").  At the lead plaintiff stage courts do not credit such "in and out" losses. *E.g.*, *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (courts only evaluate "recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 NGG RER, 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007), *adhered to on reconsideration,* No. 06CV1825NGGRER, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) (not counting in-and-out losses a lead plaintiff); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (losses incurred before disclosure of defendants' misconduct are not recoverable as they are not proximately linked to the misconduct at issue in litigation).

In contrast to Remer, the Grahams have the largest LIFO losses of $830,428.82. The Grahams also have the most net shares - 301,286 vs. Remer's 88,060.  (*See,* Dkt. No. 12-3; Exhibit 1 hereto). Courts have looked to net shares purchased as a key metric in assessing financial interest. *See, e.g., Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) (movant with "the largest losses and the largest number of net shares purchased…is presumed to have the largest financial interest and is therefore the presumptive lead plaintiff."); *Schueneman v. Arena Pharm., Inc.*, No. 10CV1959 BTM BLM, 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011) (movant with largest number of retained shares has greatest financial interest.); *Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (movant with the largest number of net shares has the greatest potential damages recovery.).

B.      **The Grahams are the Presumptive Lead Plaintiffs**

The PSLRA provides that there is a "rebuttable presumption . . . that the most adequate plaintiff . . . is the person or group of persons…that . . . has the largest financial interest in the

3

relief sought by the class." *See* 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(I). To overcome the strong presumption entitling the Grahams to be appointed Lead Plaintiffs, the PSLRA requires "*proof*" that the presumptive Lead Plaintiffs are inadequate or atypical. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected. Competing movants may attempt to conjure up speculative arguments to rebut the powerful presumption in favor of the Grahams. Any such speculative challenge does not satisfy the PSLRA's requirement that the presumptively most adequate plaintiffs may only be rejected if a rival movant presents "proof" that the presumptive lead plaintiffs, here the Grahams, will not adequately represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence …."); *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007) ("Speculation and conjecture from one interested party is not enough to prove a nefarious collaboration[.]"; *Labul, v. XPO Logistics, Inc.,* No. 3:18-CV-2062 (VLB), 2019 WL 1450271, at *9 (D. Conn. Apr. 2, 2019) ("Proof of inadequacy, and not merely speculation, is required to rebut the presumption of most adequate plaintiff."). No proof has been presented to challenge the Grahams' adequacy.

In addition to the Grahams' *prima facie* showing of their adequacy and typicality in their opening papers, the Grahams have filed herewith a declaration further demonstrating their adequacy and typicality. *See* Declaration of Patrick and Wendy Graham ("Graham Decl." or "Graham Declaration"), attached hereto as Exhibit 2. The Grahams, a married couple, have been investing in the stock market for over 20 years. Graham Decl., at ¶¶2-3. Prior to making their lead plaintiff motion, they were aware of the duties of a lead plaintiff, were actively pursuing

4

their case, and vetted counsel. *Id.,* at ¶¶1, 4-6. Further, the Grahams understood that lead plaintiff status was not required of them to seek lead plaintiff status. *Id.,* at ¶4.

## II.   THE GRAHAMS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiffs to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiffs' selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Molson Coors Brewing Co. Sec. Litig*., 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.").

The Grahams have selected The Rosen Law Firm, P.A. ("Rosen") as Lead Counsel. The Firm has the resources and expertise to litigate this action efficiently and aggressively. As the Firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors (Dkt. No. 12-4). Moreover, as the Graham Declaration states, well before the lead plaintiff deadline they had several communications with Rosen to discuss the case as well as the lead plaintiff appointment process and responsibilities. Graham Decl., ¶4. Thus, the Court may be assured that by approving the Grahams' selection of counsel, the members of the class will receive excellent legal representation.

## III.   COMPETING MOTIONS SHOULD BE DENIED

The competing motions should be denied as the Grahams have the greatest financial interest in the litigation and should therefore be appointed Lead Plaintiffs without further analyses. In no way are the Grahams conceding or acknowledging that the competing movants are adequate or that their claims are typical. The Grahams reserve the right to address the competing movants' adequacy or typicality, should the Court reach those motions.

## CONCLUSION

For the foregoing reasons, the Grahams' motion should be granted in its entirety and the competing motions should be denied.


Dated: April 15, 2019                    Respectfully submitted,

                                         **THE ROSEN LAW FIRM, P.A.**

                                         /s/ Phillip Kim
                                         Phillip Kim, Esq. (PK 9384)
                                         Laurence M. Rosen, Esq. (LR 5733)
                                         275 Madison Avenue, 34th Floor
                                         New York, New York 10016
                                         Telephone: (212) 686-1060
                                         Fax: (212) 202-3827
                                         Email: pkim@rosenlegal.com
                                         Email: lrosen@rosenlegal.com

                                         *[Proposed] Lead Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2019, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim