# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES GLAVAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> REVOLUTION LIGHTING TECHNOLOGIES, INC., ROBERT V. LAPENTA, CHARLES J. SCHAFER, and JAMES A. DEPALMA, <br><br> Defendants. | CASE No.: 1:19-cv-00980-JPO |
| CHRIS HUBNER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> REVOLUTION LIGHTING TECHNOLOGIES, INC., ROBERT V. LAPENTA, CHARLES J. SCHAFER, and JAMES A. DEPALMA, <br><br> Defendants. | CASE No.: 1:19-cv-02308-JPO |
| BOB BISHOP, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> REVOLUTION LIGHTING TECHNOLOGIES, INC., ROBERT V. LAPENTA, CHARLES J. SCHAFER, and JAMES A. DEPALMA, <br><br> Defendants. | CASE No.: 1:19-cv-02722-JPO |

DECLARATION OF ZACHARY NYE, PH.D.

April 22, 2019

I, Zachary Nye, hereby declare as follows, pursuant to 28 U.S.C. § 1746:

## I.    Background and Qualifications

1.    I am a financial economist and Vice President at Stanford Consulting Group, Inc. ("SCG").  Since 1981, SCG has provided economic research and expert testimony for business litigation, and regulatory and legislative proceedings.  All SCG professionals hold masters or doctoral degrees in business, economics, finance or operations research, and certain senior consultants have testified as experts in these fields.  I have an A.B. in Economics from Princeton University; an M.Sc. in Finance from the London Business School; and a Ph.D. in Finance from the Paul Merage School of Business at the University of California, Irvine.  I have co-authored academic research published in peer-reviewed conference proceedings, as well as working papers with finance faculty at various universities.  My research areas include the market efficiency of underlying and derivative securities, volatility forecasting, risk management, financial econometrics, valuation and corporate finance.  I have previously served as an expert witness in matters involving securities litigation, as well as business and intellectual property valuation.  My curriculum vitae, which includes my academic research, publications in the past ten years, and prior expert testimony in the past four years, is attached hereto as Exhibit 1.

2.    My current hourly rate is $675.  I have received assistance from individuals at SCG, who worked under my direction; their fees charged for this project are their standard hourly rates.  Neither my compensation nor that of any individual at SCG is contingent on the outcome of this litigation.

## II.    Scope of Engagement

3.    I have been retained by Faruqi & Faruqi LLP ("Counsel"), on behalf of lead plaintiff movant Fred Remer ("Remer"), to calculate Remer's "out-of-pocket" market losses from his purchases of the common stock of Revolution Lighting Technologies, Inc. ("RVLT" or the

"Company")[1] during the period March 14, 2014 through November 14, 2018, both dates inclusive (the "Class Period"), under the "Last-In-First-Out" ("LIFO") share matching methodology.[2]  Counsel also has asked that I perform these calculations under two different assumptions regarding the treatment of losses or profits earned on sales of shares that were not held over any of the five alleged corrective event dates (*i.e.*, "in-and-out" transactions). Specifically, I have been asked to calculate Remer's "out-of-pocket" market losses:

    i.   ***including*** losses or profits from "in-and-out" transactions; and

    ii.   ***excluding*** losses or profits from "in-and-out" transactions.

4.      In my calculation of losses for Remer, I have used the transaction data contained in Exhibit C ("Chart of Remer's Losses") to the Declaration of Richard W. Gonnello In Support For (1) Consolidation; (2) Appointment as Lead Counsel; and (3) Approval of Lead Counsel, dated April 1, 2019.

### III.    Remer's Actual Out-of-Pocket Losses

5.      I have calculated Remer's actual "out-of-pocket" market losses from purchases of RVLT stock during the Class Period.  Under the "out-of-pocket" methodology, all purchases of RVLT stock during the Class Period are included, regardless of whether or when such stock was sold. However, sales of shares matched to Remer's purchases prior to the start of the Class Period (*i.e.*, Remer's "opening position") are excluded from the calculation.[3]  Remer's total out-of-pocket losses under the LIFO share matching methodology are **$1,147,521**.  (*See* Exhibit 2.)

---

[1] The common stock of Revolution Lighting Technologies, Inc. is listed on the Nasdaq Capital Market exchange under the ticker "RVLT."

[2] Under the LIFO share matching methodology, sales are matched to the most recent purchase prior to that sale.

[3] Remer's opening position was 11,940 shares.

6.    The Memorandum of Law of Patrick and Wendy Graham In Opposition To Competing

Lead Plaintiff Motions, dated April 15, 2019 (the "Graham Opposition") states:

> Although Remer claims to have calculated his loss on a LIFO basis, his calculations are incorrect.  When matching his last shares purchased to his first sales, Remer's losses are only $817,948.68—less than the Grahams' LIFO losses of $830,428.82.[4]

However, the Graham Opposition fails to mention that Remer had an opening position of 11,940

shares, the entirety of which he sold shortly after the start of the Class Period (during the period

March 25, 2014 through October 8, 2014), at which point he held (0) zero shares of RVLT stock.

Furthermore, while the "Loss Chart" for Remer (attached as Exhibit 1 to the Graham Opposition)

excludes the cost basis of Remer's opening position, it ***includes*** the proceeds of shares sold from

his opening position.  As a result, the Graham Opposition incorrectly offsets Remer's losses with

"gains" calculated under the false assumption that his opening position was purchased at zero

cost.  When both the purchase and sale transactions for Remer's opening position of 11,940

shares are excluded from the loss calculation (because these shares were purchased ***prior to the***

***Class Period***), Remer's total out-of-pocket losses are $1,147,521.[5]

---

[4] Graham Opposition, p. 2.

[5] According to the methodology used in Exhibit 1 to the Graham Opposition, Remer

- Purchased 511,517 shares for $3,157,547;
- Sold 423,457 shares for $2,287,613; and
- Retained 88,060 shares valued at $0.5903 per share or $51,985. ($3,157,547 - $2,287,613 - $51,985 = $817,949).

When excluding Remer's purchases and sales of his opening position (11,940 shares), Remer

- Purchased 511,517 shares for $3,157,547;
- Sold 411,517 shares for $1,950,993; and
- Retained 100,000 shares valued at $0.5903 per share or $59,034. ($3,157,547 - $1,950,993 - $59,034 = $1,147,521).

## IV.    Remer's Out-of-Pocket Losses Excluding "In-and-Out" Transactions

7.    Though I have not performed analyses of loss causation or damages to date, it is my understanding from Counsel that this case currently involves at least five alleged corrective events, which impacted the market price of RVLT stock on: September 22, 2017; August 2, 2018; October 17, 2018; October 22, 2018; and November 15, 2018.  Accordingly, I have calculated Remer's "out-of-pocket" market losses on purchases of RVLT stock during the Class Period that exclude losses or profits from "in-and-out" transactions that were not held through any of the five alleged corrective event dates.  Remer's losses under the LIFO share matching methodology excluding "in-and-out" transactions are **$1,245,936**.  (*See* Exhibit 3.)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on April 22, 2019.

Zachary Nye, Ph.D.

- 4 -