**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: REVOLUTION LIGHTING TECHNOLOGIES, INC. SECURITIES LITIGATION | No. 1:19-cv-00980-JPO |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND............................................................... 1

    A.    Description Of The Action.............................................................................. 1

    B.    The Proposed Settlement ............................................................................... 3

ARGUMENT ........................................................................................................................ 4

I.       THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 4

    A.    The Court "Will Likely Be Able To" Approve The Proposed Settlement ............... 4

        1.    The Class Has Been Adequately Represented ........................................... 5

        2.    The Proposed Settlement Was Negotiated at Arm's Length ...................... 6

        3.    The Relief Provided for the Class Is Adequate.......................................... 7

            a.    The Costs, Risks, and Delay of Trial and Appeal........................... 7

            b.    The Proposed Method for Distributing Relief Is Effective............. 9

            c.    Terms of Attorneys' Fees and Timing of Payment....................... 10

            d.    Related Agreements ...................................................................... 11

        4.    The Settlement Treats Class Members Equitably..................................... 11

        5.    The Stage of the Proceedings and the Extent of Discovery
            Completed............................................................................................... 12

        6.    The Risks of Maintaining the Class Action Through Trial....................... 13

        7.    The Ability of Defendants To Withstand a Greater Judgment ................. 13

        8.    The Reasonableness of the Settlement in Light of the Best Possible
            Recovery and the Attendant Risks of Litigation..................................... 15

    B.    The Court "Will Likely Be Able To" Certify The Class For Settlement................. 16

        1.    The Proposed Settlement Class Meets the Requirements of
            Rule 23(a)............................................................................................... 17

            a.    There Are Common Questions of Law and Fact .......................... 18

            b.    The Proposed Class Representative's Claims Are Typical........... 19

            c.    The Proposed Class Representatives Will Fairly and
                Adequately Protect the Interests of the Settlement Class ............. 20

        2.    The Proposed Settlement Class Satisfies Rule 23(b)(3) ........................... 20

a.   Common Questions of Law and Fact Predominate ...................... 20

b.   A Class Action Is Superior to Other Methods of Adjudication................................................................................. 21

3.   The Faruqi Firm Is Adequate to Serve as Class Counsel.......................... 22

II.   THE PROPOSED PLAN AND FORMS OF NOTICE SHOULD BE APPROVED ...... 22

III.   PROPOSED SCHEDULE ............................................................................... 24

CONCLUSION.................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................................15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................................6, 14

*Allen v. Dairy Farmers of America, Inc.*,
    No. 5:09-cv-230, 2011 WL 1706778 (D. Vt. May 4, 2011) ...............................................9, 16

*In re. Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012)........................................................................................17, 20

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)....................................................................................................20, 21

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)...........................................................................................5, 6

*In re Beacon Assocs. Litig.*,
    No. 09 Civ. 777(LBS)(AJP), 2012 WL 1569827 (S.D.N.Y. May 3, 2012) ............................19

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)........................................................................................16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)........................................................................................17, 19

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631(CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)....................11

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013)................................................................................22

*In re Citigroup Sec. Litig.*,
    No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ...........................15, 16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)........................................................................................ *passim*

*Consol. Edison, Inc. v. Ne. Utils.*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004)................................................................................23

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)...................................................................................................14

*In re Deutsche Telekom AG Sec. Litig.*,
   229 F. Supp. 2d 277 (S.D.N.Y. 2002)...................................................................................21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...................................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...........................6

*Frank v. Eastman Kodak, Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..........................................................................................13

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................................12

*In re GSE Bonds Antitrust Litig.*,
   No. 19-CV-1704 (JSR), 2019 WL 5848960 (S.D.N.Y. Nov. 7, 2019)........................... *passim*

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 17, 2018) ....................................11

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-Civ.-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .................................10

*In re iDreamsky Tech. Ltd. Sec. Litig.*,
   No. 1:15-cv-2514(JPO),
   2018 WL 8950640 (S.D.N.Y. Apr. 6, 2018) (Oetken, J.).......................................................10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   210 F.R.D. 476 (S.D.N.Y. 2002) ...............................................................................17, 18, 21

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................................16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   11 MDL 2262, 2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) ..................................................4

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................13, 14

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)...................................................................................................17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..................................16

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    241 F.R.D. 435 (S.D.N.Y. 2007) ...................................................................................19

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)..........................................................................................20

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)..........................................................................................15

*In re NYSE Specialists Sec. Litig.*,
    260 F.R.D. 55 (S.D.N.Y. 2009) ..............................................................................17, 18

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................14, 15

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019).................................................................................5, 12

*In re Platinum and Palladium Commodities Litig.*,
    No. 10cv3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ...........................................16, 17

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*,
    164 F.R.D. 362 (S.D.N.Y. 1996) ...................................................................................24

*Rieckborn v. Velti PLC*,
    No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ....................................12

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 7961 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014).................................23

*Slomovics v. All For a Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ..................................................................................9

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) .....................................................................................8

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)..............................................................................10

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ...........................................................................22, 23, 24

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .................................8

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ...........................................................................18, 19, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..................................................................................................4

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)..............................5

*Yang v. Focus Media Holding Ltd.*,
    No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)............... *passim*

**Statutes**

15 U.S.C. § 78u-4(a)(7) ...............................................................................................23

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Fed. R. Civ. P. 23, advisory committee's note 2018 amendments ..................................11

Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2018 Full-Year Review* (NERA 2019)....................................................15

Lead Plaintiff Fred Remer ("Lead Plaintiff"), on behalf of himself and the putative Class, and defendants Revolution Lighting Technologies, Inc. ("Revolution Lighting" or the "Company"), Robert V. LaPenta, Charles J. Schafer, and James A. DePalma (collectively, "Defendants") have reached a proposed Settlement for $2,083,333.33 that, if approved, will resolve all claims in the above-captioned action (the "Litigation" or the "Action").[1]  Lead Plaintiff respectfully submits this memorandum of law in support of his motion for preliminary approval of the Settlement and requests that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").  The Preliminary Approval Order will, *inter alia*: (1) preliminarily approve the Settlement set forth in the Stipulation; (2) certify the Class for settlement purposes; (3) appoint Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel for settlement purposes; (4) approve the form and manner of providing notice of the Settlement to the Class; and (5) set a date for the Final Approval Hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.  Description Of The Action**

Beginning on January 31, 2019, four putative securities class actions were filed in the United States District Court for the Southern District of New York, asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and United States Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.  *See*

---

[1]     Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated March 18, 2020 ("Stipulation"), filed concurrently herewith; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; and (e) all references to Exhibits 1-2 are to the exhibits annexed to the Declaration of Richard W. Gonnello in support of this motion, filed concurrently herewith.

*Glavan v. Revolution Lighting Technologies, Inc., et al.*, No. 1:19-cv-00980-JPO (S.D.N.Y.);

*Hubner v. Revolution Lighting Technologies, Inc., et al.*, No. 1:19-cv-02308-JPO (S.D.N.Y.);

*Bishop v. Revolution Lighting Technologies, Inc., et al.*, No. 1:19-cv-02722-JPO (S.D.N.Y.);

*Remer v. Revolution Lighting Technologies, et al.*, 1:19-cv-04252 (S.D.N.Y.) ("*Remer* Docket").

On July 29, 2019, the Court consolidated the actions under the caption *In re: Revolution Lighting Technologies, Inc. Sec. Litig.*, No. 1:19-cv-00980-JPO (S.D.N.Y.), and appointed Fred Remer as Lead Plaintiff and the Faruqi Firm as Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3). *See* ECF No. 45 at 11-12; *Remer* Docket, ECF No. 14.

The Complaints in the actions allege that, during the Class Period, Defendants made numerous false and/or misleading statements about the Company's revenue, revenue recognition policies, the effectiveness of the Company's internal controls, and the Company's business prospects. *See, e.g.*, *Remer* Docket, ECF No. 1 ("*Remer* Complaint") at ¶¶1-14, 28-59.[2] Meanwhile, Defendants failed to disclose that, *inter alia*, (1) the Company had been improperly recognizing revenue associated with certain transactions and, as a result, its financial statements for numerous periods from 2014 through 2018 were misstated; (2) the Company lacked adequate internal controls over financial reporting with respect to revenue recognition; (3) and consequently, the Company would be subject to regulatory scrutiny and would incur substantial costs. *See* ¶¶13, 52. The true facts concealed by Defendants came out gradually over time in disclosures on September 22, 2017, August 2, 2018, October 17, 2018, October 19, 2018, and November 14, 2018, each of which led to a decline in the price of Revolution Lighting's common stock. *See* ¶¶3-12, 44-45, 48-49, 53-59.

---

[2]     All citations to "¶" are to the paragraphs in the *Remer* Complaint unless otherwise noted.

Revolution Lighting has since admitted that it improperly recognized revenue from 2014 through the second quarter of 2018, and that it had a material weakness in internal controls with respect to revenue recognition.  *See* RVLT, Current Report (Form 8-K) at 3-4 (June 20, 2019) ("June 20, 2019 Form 8-K").  It has also announced that it will need to restate many of its financial statements for 2014-2018, *see id*. at 2, 4-5, which it has not yet done.  As a result of these issues and the SEC's ongoing investigation into the Company's revenue recognition practices, the Company has not filed any of its required quarterly or annual SEC filings since August 10, 2018.  *See* RVLT, Notification of Late Filing (Form 12b-25) (Nov. 13, 2018), (Mar. 27, 2019), (May 10, 2019), (Aug. 12, 2019).  Its delinquent SEC filings and its decimated stock price led to the Company being delisted from the Nasdaq, effective October 14, 2019.  *See* RVLT, Current Report (Form 8-K) (Oct. 10, 2019).

On October 17, 2019, the parties engaged in an in-person mediation session before Jed Melnick, Esq., a highly experienced securities litigation mediator.  The mediation was preceded by submission of mediation statements and exhibits.  The parties came to an agreement in principle during the mediation session and then engaged in negotiations over the following months to finalize the terms of the Stipulation.

**B.     The Proposed Settlement**

The Settling Parties agreed to resolve the litigation for total consideration of $2,083,333.33.  The Settlement Amount will be paid by Defendants' insurer, placed into an interest-bearing escrow account, and after paying attorneys' fees and expenses approved by the Court and other costs of settlement, the Settlement Fund will be distributed to Authorized Claimants.  In exchange for the payment of the Settlement Amount, Lead Plaintiff and the Class will release all Released Plaintiffs' Claims against the Defendant Releasees.  As further described below, Lead Plaintiff entered into this Settlement with a full and comprehensive

3

understanding of the strengths and weaknesses of the claims in the Complaints.  Lead Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon, and thus is in the best interests of, the Class.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Fed. R. Civ. P. 23(e) provides that any compromise of a class action must receive court approval.  There is a "strong judicial policy" in favor of class action settlements.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

The settlement approval process involves two steps.  First, the "court makes a preliminary evaluation" of the settlement's "fairness" to determine whether it is appropriate to send notice of the proposed settlement to the class.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11 MDL 2262 (NRB), 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016).  Second, the court determines whether to grant final approval of the proposed settlement after notice has been provided to the class and a hearing has been held.  *Id.*

Under the amendments to Rule 23 that went into effect on December 1, 2018, the issue at preliminary approval is whether the court "will *likely* be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purpose of judgment on the proposal."  Rule 23(e)(1)(B).  For the reasons explained below, the Settlement meets Rule 23(e)'s requirements.

### A.    The Court "Will Likely Be Able To" Approve The Proposed Settlement

Rule 23(e)(2) directs the court to determine whether the settlement is "fair, reasonable, and adequate" after considering: (A) the adequacy of the representation; (B) the existence of arm's-length negotiations; (C) the adequacy of the relief provided; and (D) the equitable treatment of class members.  *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 5848960, at *1 (S.D.N.Y. Nov. 7, 2019) (citing Fed. R. Civ. P. 23(e)(2)).

Rule 23(e)(2)'s new factors, however, do not displace the factors that the Second Circuit previously used to determine whether a settlement is "fair, reasonable, and adequate"—the so-called "*Grinnell* factors." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (stating that "the new Rule 23(e) factors [] add to, rather than displace, the *Grinnell* factors[]"); *GSE*, 2019 WL 5848960, at *1 (same).  The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Payment Card*, 330 F.R.D. at 29 (citing, *inter alia*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).  A settlement need not meet all nine *Grinnell* factors to be considered "fair, reasonable and adequate[;]" rather, "the court should consider the totality of these factors in light of the particular circumstances." *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *4 (S.D.N.Y. Sept. 4, 2014).  As explained below, the Settlement satisfies Rule 23(e)(2) and the applicable[3] *Grinnell* factors.

### 1.    The Class Has Been Adequately Represented

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class."  Determining adequacy generally involves considering whether: "1) plaintiff's interests are antagonistic to the interest of other members of

---

[3]      *Grinnell* factor number two, the Class's reaction to the Settlement, is not a relevant factor at this time because notice has not yet been distributed. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both prongs are met here. Lead Plaintiff's interests are directly aligned with those of other Class Members, as he claims to have suffered damages from the same alleged conduct, and through those claims seeks the same recovery from Defendants. *Yang*, 2014 WL 4401280, at *12 (finding adequacy established where, "like all Class Members, [lead plaintiff] purchased Focus Media ADSs at artificially inflated prices during the Class Period as a result of Defendants' alleged materially false and misleading statements and was damaged thereby[]").

Additionally, Lead Counsel is a national law firm that is qualified, experienced, and able to conduct this litigation. *See* Ex. 1, Faruqi Firm resume. Lead Counsel has devoted significant efforts to identifying and investigating the potential claims in this Action, including by hiring third party investigators to contact former employees and other relevant individuals, and has fought to preserve those claims.

### 2. The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the court to consider whether the proposed settlement "was negotiated at arm's length." A proposed settlement is entitled to a presumption of fairness if "it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("[A] strong initial presumption o[f] fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations.").

The proposed Settlement was the result of arm's length negotiations between Lead Counsel and Defendants' counsel with the assistance of an experienced mediator, Jed S.

6

Melnick, Esq. Counsel engaged in a mediation session with Mr. Melnick after submitting mediation statements and exhibits, and then worked over the subsequent months to finalize the terms of the Stipulation. *Yang*, 2014 WL 4401280, at *5 (finding that the participation of Mr. Melnick, "a highly qualified mediator," "strongly supports a finding that negotiations were conducted at arm's length and without collusion[]").

Moreover, the Settlement was reached only after considerable investigation and analysis of the procedural hurdles facing this litigation, the facts and law supporting the claims against Defendants, and the defenses available to them. Accordingly, the Settlement was not achieved until the parties were sufficiently informed of the strengths and weaknesses of the case in order to competently evaluate its merits and agree on a settlement figure that was both acceptable to Defendants and fair, adequate, and reasonable to the Class.

### 3.    The Relief Provided for the Class Is Adequate

Rule 23(e)(2)(C) requires the Court to determine whether the relief provided for the Class is adequate, taking the following four specific considerations into account: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of distributing relief to the class; (3) the terms and timing of attorneys' fees; and (4) any related agreements. Each of these considerations is addressed below, along with the *Grinnell* factors that overlap with them.

### a.    The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of trial and appeal. Fed R. Civ. P. 23(e)(2)(C)(i). This inquiry overlaps with *Grinnell* factors one, four, and five: the "complexity, expense and likely duration of the litigation," the "risks of establishing liability" and "the risks of establishing damages." *See GSE*, 2019 WL 5848960, at *3 (noting the overlap).

Here, the Settlement Amount of $2,083,333.33 provides an immediate benefit to the class

7

and is adequate when compared to the risk that no recovery, or lesser recovery, might be achieved after prolonged litigation.  While Lead Plaintiff believes that the claims asserted in the Action are meritorious and that the evidence developed to date supports those claims, he acknowledges that continuing the Action poses significant risks and additional costs.  It is well known that securities class action litigation is inherently complex.  *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (stating that "class action suits in general have a well-deserved reputation as being most complex[,]" and that federal courts "have long recognized" that securities class action "litigation is notably difficult and notoriously uncertain[]").

This case is no exception, as it involves complex securities fraud rules, statutes, and accounting rules.  *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) (noting that the involvement of "complex issues of accounting and internal financial controls which could be difficult to present and prove to a jury" was a risk that supported settlement).  For example, one of the key issues in this Action involves contractual arrangements that the Company had with certain customers over a four-year period and how the applicable accounting rules allowed revenue from these arrangements to be recorded.  *See, e.g.*, ¶¶51, 55, 57.  Even if the Action were to survive a motion to dismiss, the fact discovery process would require, among other things, numerous document subpoenas to third parties, which are notoriously difficult to enforce; retention of accounting and financial expert witnesses; discovery motion practice; production and review of thousands of pages of documents; and taking numerous depositions.  Defendants have denied any wrongdoing and would undoubtedly aggressively litigate this Action at each step.  Thus, even after the considerable time and expense of discovery, there is a chance Lead Plaintiff's claims could be dismissed at summary judgment.

Even if the claims were to survive summary judgment, trial would be very time consuming and expensive and would monopolize valuable court resources. *See Allen v. Dairy Farmers of America, Inc.*, No. 5:09-cv-230, 2011 WL 1706778, at \*3 (D. Vt. May 4, 2011) ("Neither the controlling case law nor the applicable rules and statutes favor [] an approach" that "would also force Dean, a party that is willing to settle on terms Plaintiffs consider favorable, to proceed with costly and protracted litigation."). Indeed, the damages issues present in this case would likely boil down to a "battle of the experts" at trial, creating the risk that the jury may believe Defendants' expert over Lead Plaintiff's and find in Defendants' favor. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at \*8 (S.D.N.Y. July 27, 2007).

Furthermore, a favorable judgment could be the subject of post-trial motions and appeals, delaying any payment to Class Members even if Lead Plaintiff were to prevail at trial. *See Slomovics v. All For a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class.").

### b. The Proposed Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims. The Settlement provides a well-established method for distributing relief to eligible Class Members and processing claims. As explained in Section II, *infra*, the notice plan includes mailing the Notice and Proof of Claim and Release form to all Class Members who can be identified with reasonable effort. *See* Stipulation, Ex. A-1; Ex. A-2. These documents will request the information necessary for the Claims Administrator to calculate each eligible Class Member's claim pursuant to the Plan of Allocation. *See* Stipulation, Ex. A-1 at 14-20; Ex. A-2.

9

Under the proposed Plan of Allocation, which was developed with the assistance of a damages consultant, Class Members who are eligible to participate in the Settlement will receive a *pro rata* share of the recovery based upon their claimed losses consistent with the Action's allegations. *See* Stipulation, Ex. A-1 at 14-20. Lead Plaintiff respectfully submits that this method of distribution and claims processing is effective. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

### c.    Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intends to seek an award of attorneys' fees in an amount up to a third of the Settlement Amount, plus accrued interest, and expenses in an amount not to exceed $75,000. This request is in line with those awarded in recent cases in this District. *See, e.g., In re iDreamsky Tech. Ltd. Sec. Litig.*, No. 1:15-cv-2514(JPO), 2018 WL 8950640, at *4 (S.D.N.Y. Apr. 6, 2018) (Oetken, J.) (awarding attorney's fees of 33.3%);[4] *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ.-8557 (CM), 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014) (approving requested fee of 33.3% of the $3.8 million settlement amount and collecting cases awarding that percentage). Pursuant to the Stipulation, any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel only after the Court enters the Judgment. Stipulation ¶6.2. Additionally, Lead Plaintiff intends to request an amount not to exceed $10,000 pursuant to 15 U.S.C. § 78u-4(a)(4) for his reasonable costs and expenses in connection with representing the Class.

---

[4]    The memorandum of law filed in *iDreamsky* in support of the fee award makes clear that the amount of attorneys' fees awarded, $1,383,333.33, represented one-third of the $4.15 million settlement amount. *See In re iDreamsky Tech. Ltd. Sec. Litig. Sec. Litig.*, No. 1:15-cv-2514(JPO), ECF No. 105 at 1 (Feb. 27, 2018).

### d.    Related Agreements

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it.  The only such agreement is the parties' confidential Supplemental Agreement, which gives Defendants the option "to terminate the Settlement in the event that a particular confidential threshold of Class Members subject to this Settlement exclude themselves from the Class[.]"  Stipulation ¶7.4.  This type of agreement is common in class actions and does not render a settlement unfair.  *See Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631(CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 17, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### 4.    The Settlement Treats Class Members Equitably

Rule 23(e)(2)(d) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways."  Fed. R. Civ. P. 23, advisory committee's note 2018 amendments.  Under the proposed Plan of Allocation, Class Members who are eligible to participate in the Settlement will be required to sign the same release and will receive a *pro rata* share of the recovery based upon their claimed losses consistent with the Action's allegations.  *See* Stipulation, Ex. A-1 at 14-20.  Thus, the proposed Settlement treats members of the Class equitably relative to each other.  *See GSE*, 2019 WL 5848960, at *7 ("Under the proposed plan of distribution, claimants will be

11

treated equitably by receiving a *pro rata* share of the recovery based on the estimated price impact of defendants' conduct on their . . . transactions."); *Payment Card*, 330 F.R.D. at 47 (finding that this factor weighed in favor of preliminary approval where, *inter alia*, "the scope of the release applies uniformly to putative class members, and does not appear to affect the apportionment of the relief to class members . . .").

### 5.    The Stage of the Proceedings and the Extent of Discovery Completed

*Grinnell* factor number three, "the stage of the proceedings and the amount of discovery completed – is intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004). Formal discovery is not required before settlement; rather, "the question is whether the parties had adequate information about their claims" before entering into settlement. *Id.*; *see Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding that "[d]espite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant facts and law[,]" even though settlement was reached prior to even the filing of a motion to dismiss).

Although the Settlement was achieved early in the Litigation, it was reached only after the parties had a comprehensive understanding of the potential risks and procedural hurdles facing further litigation of this Action. For example, prior to the mediation, Lead Counsel conducted a thorough investigation by reviewing and analyzing several years-worth of publicly available information regarding Defendants, consulted with investigators who conducted an investigation including by contacting relevant former employees of the Company *inter alia*, and consulted with damages experts to evaluate the Class's damages and loss causation issues. Thus, Lead Plaintiff and Lead Counsel had sufficient information to enter into the Settlement. *Yang*,

12

2014 WL 4401280, at *7 (finding that this factor supported settlement where "Plaintiff and Lead Counsel have some knowledge of the strengths and weaknesses of Plaintiff's claims and considerable knowledge about the limits on their ability to recover anything for the Class if they win . . .").

### 6.      The Risks of Maintaining the Class Action Through Trial

*Grinnell* factor number six inquires into the "risks of maintaining the action as a class action through trial." *Grinnell*, 495 F.2d at 463. The Class has not yet been certified. While Lead Plaintiff is confident that the class meets the requirements for certification, *see* Section I.B, *infra*, Lead Plaintiff is aware that there is a risk the Court could disagree given the size and trading in the market for the Company's stock. Furthermore, even if the Court were to certify the Class, there is always a risk that the Class could be decertified at a later stage in the proceedings. *See Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (acknowledging that while plaintiffs might ultimately prevail on class certification were the settlement disapproved, "the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement[]"). Thus, the risks and uncertainty surrounding Class certification also supports approval of the Settlement.

### 7.      The Ability of Defendants To Withstand a Greater Judgment

*Grinnell* factor number seven inquires into whether Defendants could withstand a judgment greater than that secured by the settlement. *Grinnell*, 495 F.2d at 463. Lead Counsel believes that the possibility of achieving a greater recovery than that provided by the Settlement is unlikely. The Settlement Amount will be funded by Defendants' insurer. *See* Stipulation ¶2.1. It is Lead Plaintiff and Lead Counsel's understanding that greater recovery from the available insurance is unlikely because it is being depleted by, *inter alia*, costs related to the ongoing SEC investigation and the six derivative actions that were filed. *See Maley v. Del Global Techs.*

13

*Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (noting the depletion of the defendants' insurance policies as a factor in evaluating whether a greater recovery could have been obtained); *Advanced Battery*, 298 F.R.D. at 178-79 (noting that the defendants' "minimal insurance coverage" supported approval of the settlement).

Additional recovery from the Company itself is also unlikely, as the Company recently noted, it "will likely need additional funding to continue its operations beyond the end of the first quarter of 2020." RVLT, Current Report (Form 8-K) (Nov. 19, 2019). While recovery might be possible from the Individual Defendants, this recovery would depend upon establishing their individual roles in the alleged fraud, including their respective scienter. Lead Counsel believes this would be an uphill battle considering, *inter alia*, that the Company's Audit Committee purportedly concluded that defendant LaPenta did not have knowledge of the accounting issues described above. *See* June 20, 2019 Form 8-K; *Maley*, 186 F. Supp. 2d at 365 (finding that greater recovery was unlikely given the company's financial condition and the difficulty of establishing the individual defendants' liability under the securities laws).

Even if Defendants could withstand a greater judgment, this factor is generally not determinative where, as here, "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (affirming district court's decision to approve the proposed settlement even though the "defendants' ability to withstand a higher judgment weighed against the settlement"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

14

**8.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

*Grinnell* factors eight and nine require the Court to evaluate the Settlement's reasonableness in light of the best possible recovery and the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.  The adequacy of a Settlement is judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  There is no specific equation by which a court determines that a settlement is reasonable, adequate, or fair.  *See PaineWebber*, 171 F.R.D. at 130.  Rather, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see PaineWebber*, 171 F.R.D. at 130 (the determination of a settlement's reasonableness "is not susceptible of a mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness").

The Settlement Fund of $2,083,333.33 represents approximately 5.78% of the Class's maximum potential damages (assuming the proposed Class is certified and all claims and damages were proven) that Lead Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent activity.  This is materially higher than the median ratio of settlement amounts to investor losses for 2018, which NERA Economic Consulting determined was 2.6%.  *See* Ex. 2 at 36, Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA 2019).  The percentage is also within the range of typical recoveries in complex securities litigation.  *See, e.g.*, *In re Citigroup Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (determining

15

settlement amount equal to 2% of the class's out-of-pocket losses "falls squarely within this range of reasonableness"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (finding settlement equal to 2% of aggregate expected recovery to be reasonable); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in complex securities class actions range from 1.6% to 14% of estimated damages).

Given the significant risk and expense of continued litigation, the proposed Settlement is well within the range of reasonableness and warrants preliminary approval to permit Class Members to at least *consider* its terms.  *See Dairy Farmers*, 2011 WL 1706778, at *3 ("[W]ere the court to deny preliminary approval . . . it would be depriving settlement class members of the right to even *consider* the [] Settlement.").

### B.    The Court "Will Likely Be Able To" Certify The Class For Settlement

Rule 23(e)(1)(B)(ii) requires the Court to consider whether it "will likely be able to certify the class for purpose of judgment on the proposal."  Lead Plaintiff seeks certification of the following Class for the purposes of Settlement only:

> All Persons who purchased or otherwise acquired the publicly traded securities of Revolution Lighting between March 14, 2014 and November 14, 2018, inclusive, and were damaged thereby.  Excluded from the Class are: (a) Persons who suffered no compensable losses, *e.g.*, those who purchased or acquired Revolution Lighting securities during the Class Period but sold prior to any alleged partial corrective disclosure; (b) Defendants; (c) the officers and directors of the Company at all relevant times; (d) members of any Defendant's immediate families; (e) any entity in which Defendants have or had a controlling interest; (f) the legal representatives, heirs, successors, and assigns of such excluded parties; and (g) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

"The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class-action settlement."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)); *In re Platinum and Palladium Commodities Litig.*,

16

No. 10cv3617, 2014 WL 3500655, at \*8 (S.D.N.Y. July 15, 2014) ("A court may certify a class for the purpose of a classwide settlement."). To certify a class for the purposes of settlement, a court must find that the proposed class satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as at least one subjection of Rule 23(b). *See In re. Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) ("Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."). Furthermore, in this Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). The proposed Class easily meets the certification standards under Rules 23(a) and 23(b).

        1.        **The Proposed Settlement Class Meets the Requirements of Rule 23(a)**

Rule 23(a) provides that a class may be certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To demonstrate numerosity, Lead Plaintiff must show only the extreme difficulty or inconvenience of joining all members of the class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007) ("The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."). The "numerosity requirement is presumed satisfied if there are 40 class members." *Platinum*, 2014 WL 3500655, at \*8. In securities class actions that relate "to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were

17

outstanding and traded during the relevant period." *In re NYSE Specialists Sec. Litig.*, 260

F.R.D. 55, 69-70 (S.D.N.Y. 2009).

During the Class Period, Revolution Lighting securities were listed and actively traded on

the NASDAQ. ¶61.  As of July 27, 2018, there were 22,477,859 Revolution Lighting shares

outstanding (RVLT, Quarterly Report (Form 10-Q) at 3 (Aug. 10, 2018)), potentially owned by

hundreds or thousands of persons who are Class Members.  Accordingly, joinder would be

impracticable, thus satisfying the numerosity requirement of Rule 23(a)(1).

### a.    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2).  Commonality does not mandate that all class members make identical

claims and arguments.  Rather, a "plaintiff must identify some unifying thread among the

members' claims that warrants class treatment." *In re Vivendi Universal, S.A. Sec. Litig.*, 242

F.R.D. 76, 84 (S.D.N.Y. 2007).  For example, in securities class actions, "where putative class

members have been injured by similar material misrepresentations and omissions, the

commonality requirement is satisfied." *Indep. Energy*, 210 F.R.D. at 479 ("The commonality

requirement has been applied permissively in securities fraud litigation.").

The overarching issues shared by all Class Members is whether Defendants violated the

Exchange Act and the rules promulgated thereunder in connection with the factual allegations

discussed above.  Specifically, common questions of law and fact in this case include: (a)

whether Defendants violated the Exchange Act and the rules promulgated thereunder; (b)

whether Defendants omitted and/or misrepresented material facts; (c) whether Defendants'

statements omitted material facts necessary to make the statements made, in light of the

circumstances under which they were made, not misleading; (d) whether Defendants knew or

recklessly disregarded that their statements were false and misleading; (e) whether the price of

18

Revolution Lighting securities was artificially inflated; and (f) the extent of the damage sustained by Class Members and the appropriate measure of damages. ¶64. These are all common questions because each Class Member has to prove the same elements to establish Defendants' liability and satisfy the low hurdle of Rule 23(a)(2). *See Vivendi*, 242 F.R.D. at 84 (finding commonality satisfied where plaintiffs allege elements of a Rule 10b-5 claim).

<b>b.      The Proposed Class Representative's Claims Are Typical</b>

A Class may be certified if the claims of the representative parties are typical of the claims of the Class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States*, 504 F.3d at 245; *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 444 (S.D.N.Y. 2007) ("The typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large . . . A close nexus between the claims assures that the representatives will advance the interests of all class members."). Typicality, however, does not require that all class members share identical claims. When a representative alleges that "the same unlawful conduct was directed at or affected both [himself] and the class sought to be represented" he will usually satisfy the typicality requirement "irrespective of minor variations in the fact patterns underlying individual claims." *In re Beacon Assocs. Litig.*, No. 09 Civ. 777(LBS)(AJP), 2012 WL 1569827, at *7 (S.D.N.Y. May 3, 2012).

Lead Plaintiff's claims arise from the same events and alleged misconduct and are based on the same legal theories as those of the proposed Settlement Class. Lead Plaintiff claims (a) that Defendants violated §§10(b) and 20(a) of the Exchange Act by issuing false and misleading statements; (b) that he and other Class Members purchased Revolution Lighting securities at

19

artificially inflated prices based on those statements and were damaged thereby; and (c) by proving his own claims, Lead Plaintiff would prove the claims of the Class Members. Accordingly, there is a sufficient nexus between Lead Plaintiff's claims and the claims asserted on behalf of the members of the Settlement Class. For these reasons, Rule 23(a)(3) is satisfied.

### c.    The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class

Under Rule 23(a)(4), the plaintiff must establish that "the representative parties will fairly and adequately protect the interests of the class." Lead Plaintiff has established his adequacy for the reasons explained in Section I.A.1, *supra*.

### 2.    The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once the four prerequisites of Rule 23(a) are met, the proposed class must also satisfy one of the requirements of Rule 23(b). *See Am. Int'l Grp.*, 689 F.3d at 238. In this case, certification is proper under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.*

### a.    Common Questions of Law and Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is satisfied when a plaintiff demonstrates that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). The Supreme Court has expressly recognized that "[p]redominance is a test readily

20

met in certain cases alleging . . . securities fraud[.]"  *Amchem*, 521 U.S. at 625.

The common questions of law and fact described above predominate over any individual questions.  The same set of operative facts applies to each Class Member (*i.e.*, each Class Member purchased the securities of Revolution Lighting during the Class Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading statements and/or omissions, and each Class Member was allegedly harmed when the undisclosed facts came to light).  Accordingly, the "predominance" requirement is satisfied.

> **b.      A Class Action Is Superior to Other Methods of Adjudication**

Rule 23(b)(3) outlines the following four factors to be considered by the Court in making a determination regarding superiority: (a) the interest of individual members in controlling the litigation; (b) the extent and nature of any litigation concerning the controversy already commenced; (c) the desirability or undesirability of concentrating litigation of the claims in a particular forum; and (d) the difficulties likely to be encountered in the management of the class action.  *See Vivendi*, 242 F.R.D. at 91 (explaining that "[t]his list of pertinent factors is nonexhaustive").[5]  When considering these factors, several courts in this District have noted that "[c]lass actions are generally well-suited to securities fraud cases such as this one because they avoid the time and expense of requiring all class members to litigate individually."  *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002); *Indep. Energy*, 210 F.R.D. at 486 ("There is also no question here that the class action device is superior to other methods of litigation.  Class actions are generally well-suited to securities fraud cases[.]").

The relevant factors are satisfied in this case.  First, prosecution of this lawsuit on a class

---

[5]      The fourth factor need not be considered because the proposed Settlement eliminates any manageability problems that may have existed here.  *See Amchem*, 521 U.S. at 620 (stating that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . .").

action basis will be more efficient than adjudication of the numerous individual shareholder claims. Indeed, the types of federal securities law violations alleged in this Action inflict economic injury on possibly hundreds of geographically dispersed investors, and pursuing individual litigation against well-financed corporate adversaries is not financially feasible for most investors. Second, Lead Plaintiff and Lead Counsel have already invested significant resources thus far in preserving the claims of Revolution Lighting investors and prosecuting the claims asserted in the Action. Any additional individual litigation would simply be duplicative of Lead Plaintiff's efforts. As well, certification is the superior method to facilitate the resolution of the Settlement Class's claims against Defendants because, absent certification, Defendants would not be able to obtain a Class-wide release and thus would have little incentive to enter into a settlement. Accordingly, Lead Plaintiffs have satisfied the superiority requirement of Rule 23(b)(3) and this Court should certify the proposed Settlement Class.

### 3.	The Faruqi Firm Is Adequate to Serve as Class Counsel

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). Lead Plaintiff respectfully requests that the Court appoint the Faruqi Firm as Class Counsel for the Settlement Class. The Faruqi Firm has, and will continue to, fairly and adequately represent the Settlement Class. As explained in Section I.A.1, *supra*, proposed counsel is knowledgeable about the applicable law, experienced in handling class actions, has performed substantial work in pursuing the claims and in reaching a settlement, and has committed the necessary resources to representing the Settlement Class. *See* Fed. R. Civ. P. 23(g)(1)(A).

## II.	THE PROPOSED PLAN AND FORMS OF NOTICE SHOULD BE APPROVED

When a settlement is proposed, class notice must meet the requirements of both Rules 23(c)(2) and 23(e) of the Federal Rules of Civil Procedure. *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 379-80 (S.D.N.Y. 2013). Under Rule 23(c)(2), the Court "must direct to

22

class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014) (finding delivery of notice by first class mail to be reasonable). In addition to being sent by an adequate delivery method, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.*; *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 (CM), 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) (". . . Rule 23(e) requires notice that is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afform them an opportunity to present their objections."). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.").

Plaintiff's proposed Notice, which will be sent by mail to potential Class Members with the Proof of Claim and Release form, has been carefully drafted to notify the Class of the Settlement's terms, the Class Members' rights in connection with the Settlement, and the date of the Final Approval Hearing in compliance with Rules 23(c)(2) and 23(e), the PSLRA, and due process. For example, the Notice includes: (i) the case caption; (ii) a description of the Action's claims; (iii) a description of the Settlement Class; (iv) the names of counsel for the Settlement Class; (v) the maximum amount of attorneys' fees, expense reimbursement, and the compensatory award for Lead Plaintiff that will be sought; (vi) the Final Approval Hearing date; (vii) a description of the Class Members' opportunity to appear at the Final Approval Hearing;

(viii) a statement of the deadline for filing objections to and exclusions from the Settlement; (ix) the consequences of exclusion; (x) the consequences of remaining in the Settlement Class; and (xi) the manner in which to obtain more information. *See, e.g.,* Stipulation, Ex. A-1 at 1-14.

The parties have agreed to use the traditional methods for notifying the Class Members: notification by mail, publication by wire service, publication in a national newspaper focusing on investors, and on a designated website. This manner of providing notice represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process. *See Vargas*, 559 F. App'x at 26-27; *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 164 F.R.D. 362, 369 (S.D.N.Y. 1996) ("[N]otice by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort[.]'"). Accordingly, this Court should find the content of the Notices and procedures for their dissemination are reasonably calculated to provide notice of the Settlement to Class Members.

## III.   PROPOSED SCHEDULE

As outlined in the proposed Preliminary Approval Order submitted herewith, the parties propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for Revolution Lighting to cause the Claims Administrator to be provided with a list of record owners | 7 days after entry of the Preliminary Approval Order (Preliminary Approval Order at ¶10) |
| Deadline for Claims Administrator to mail the Notice and Proof of Claim and Release to the list of record owners and publish them to the website ("Notice Date") | 21 business days after entry of the Preliminary Approval Order (Preliminary Approval Order at ¶11) |
| Deadline for publishing Summary Notice | 14 days after the Notice Date (Preliminary Approval Order at ¶12) |
| Deadline for submitting Proofs of Claim and Release | 90 days after the Notice Date (Preliminary Approval Order at ¶17) |

| Event | Time for Compliance |
|---|---|
| Deadline for filing the motion in support of final approval of the Settlement and the application for attorneys' fees and expenses; | 35 days before the Final Approval Hearing (Preliminary Approval Order at ¶24) |
| Deadline for filing the proof of mailing of the Settlement Notice, Proof of Claim and Release forms, and Summary Notice | 7 days before the Final Approval Hearing (Preliminary Approval Order at ¶16) |
| Deadline for objections and exclusions | 21 days before the Final Approval Hearing (Preliminary Approval Order at ¶¶18, 22) |
| Deadline for filing reply memoranda in response to any objections | 7 days before the Final Approval Hearing (Preliminary Approval Order at ¶24) |
| Final Approval Hearing | At least 100 days after entry of the Preliminary Approval Order, at the Court's convenience (Preliminary Approval Order at ¶5) |

## CONCLUSION

For the reasons stated above, Lead Plaintiff respectfully requests that the Court enter the Preliminary Approval Order which will: (a) preliminarily approve the proposed Settlement; (b) approve the proposed form and manner of providing notice; (c) certify the Class for settlement purposes; (d) appoint Lead Plaintiff as Class Representative and the Faruqi Firm as Class Counsel for settlement purposes; and (e) set a hearing date for the Final Approval Hearing.

Dated:  March 20, 2020                Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:      */s/ Richard W. Gonnello*
          Richard W. Gonnello

Richard W. Gonnello
Katherine M. Lenahan
Sherief Morsy
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 983-9331
E-mail: rgonnello@faruqilaw.com
          klenahan@faruqilaw.com
          smorsy@faruqilaw.com

25

*Attorneys for Lead Plaintiff Fred Remer*

26