**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: REVOLUTION LIGHTING TECHNOLOGIES, INC. SECURITIES LITIGATION | No. 1:19-cv-00980-JPO |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 3

ARGUMENT ...................................................................................................................... 3

I.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ............................... 3

        A.    The Class Has Been Adequately Represented ............................................ 5

        B.    The Proposed Settlement Was Negotiated at Arm's Length ..................... 6

        C.    The Relief Provided for the Class Is Adequate.......................................... 7

                1.    The Costs, Risks, and Delay of Trial and Appeal....................... 7

                        a.    The Complexity, Expense, and Likely Duration of the Litigation.................................................................... 7

                        b.    The Risks of Establishing Liability at Trial and Damages ............ 9

                2.    The Proposed Method for Distributing Relief Is Effective....................... 10

                3.    Terms of Attorneys' Fees and Timing of Payment................................. 11

                4.    Related Agreements ................................................................................. 12

        D.    The Settlement Treats Class Members Equitably.................................... 13

        E.    The Stage of the Proceedings and the Extent of Discovery Completed ................. 14

        F.    The Risks of Maintaining the Class Action Through Trial....................... 16

        G.    The Reaction of the Class ........................................................................ 17

        H.    The Ability of Defendants to Withstand a Greater Judgment.................. 18

        I.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation ....................................... 19

II.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE.......... 20

III.    THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS ........................................................................................................... 23

IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ............... 24

i

CONCLUSION.............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................................19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................3, 17, 18, 21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775(JG)(VVP), 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ...........................21

*In re American Bank Note Holographics, Inc., Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)...........................................................................10

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.*,
    No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...................................................20

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................................24

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
    310 F.R.D. 69 (S.D.N.Y. 2015) .......................................................................................16

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)............................................................................................20

*In re China MediaExpress Holdings, Inc. Shareholder Litig.*,
    No. 11-CV-0804 (VM), 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ...............................12

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)........... *passim*

*In re Chrysler-Dodge-Jeep Ecodiesel® Mtg., Sales Practices, & Prods. Liab.
    Litig.*,
    No. 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) ....................................5

*In re Citigroup Sec. Litig.*,
    No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ................................20

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)....................................17

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..............................................................................................19

*Detroit v. Grinnell,*
    495 F.2d 448 (2d Cir. 1974)............................................................................................4, 5, 7

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..........................................................................................................21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...............................10

*In re FLAG Telecom Holdings Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..........................9

*Frank v. Eastman Kodak, Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)......................................................................................17

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................15

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)..................................................................................7

*In re GSE Bonds Antitrust Litig.*,
    No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) ...................................5

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................11

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............................8

*In re iDreamsky Tech. Ltd. Sec. Litig. Sec. Litig.*,
    No. 1:15-cv-2514(JPO), 2018 WL 8950640 (S.D.N.Y. Apr. 6, 2018) (Oetken, J.)................11

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)................................................................................20

*In re LivingSocial Marketing and Sales Practice Litig.*,
    298 F.R.D. 1 (D.D.C. 2013)..............................................................................................12

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................ *passim*

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................................12

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)..............................................................................................19

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................7, 10, 19

*Patel v. Axesstel*,
    No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) .......................23

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................5

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
    327 F.R.D. 38 (S.D.N.Y. 2018) ..................................................................................16

*Rieckborn v. Velti PLC*,
    No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ....................................16

*Slomovics v. All For A Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ...............................................................................9

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).............................................................................7

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................................................9

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ...................................................................................5

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)..............................................................................13

*In re Valeant Pharms. Int'l Inc., Sec. Litig.*,
    No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020)
    (Report and Recommendation of the Special Master)................................................................13

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...............9, 17, 21, 22

*In re Veritas Software Corp. Sec. Litig.*,
    No. C-03-0283 MMC, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005) ...................................14

*In re Virtus Investment Partners, Inc. Sec. Litig.*,
    No. 15CV1249, 2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018)................................................24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................................3

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)............................................................................20

v

*Yang v. Focus Media Holding Ltd.*,
     No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)................6, 7, 15

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action
     Litigation: 2018 Full-Year Review* (NERA 2019)....................................................8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Fred Remer ("Lead Plaintiff"), on behalf of himself and the putative Class, respectfully submits this memorandum of law in support of his motion for final approval of the $2,083,333.33 Settlement (the "Settlement Amount") reached in the above-captioned securities class action (the "Action") and approval of the Plan of Allocation (the "Plan").[1]  The Settlement's terms are set forth in the Stipulation.

**INTRODUCTION**

Lead Plaintiff, on behalf of himself and the putative Class, and defendants Revolution Lighting Technologies, Inc. ("Revolution Lighting" or the "Company"), Robert V. LaPenta, Charles J. Schafer, and James A. DePalma (collectively, "Defendants") have reached a proposed Settlement of all claims asserted in the Action in exchange for $2,083,333.33 in cash.  In light of the significant risk that a smaller recovery—or no recovery at all—might be achieved if the Action were to proceed to trial, and the likely appeals that would follow, the Settlement represents a favorable result for the Class.

As discussed below and in the Gonnello Declaration, the Settlement resulted from arm's length negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  Prior to reaching the Settlement, Lead Counsel thoroughly investigated the facts alleged in the Action, researched the applicable law with

---

[1]     Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated March 18, 2020 ("Stipulation"), ECF No. 58; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; (e) all references to the "Gonnello Declaration" or "Gonnello Decl." are to the Declaration of Richard W. Gonnello filed herewith; (f) all references to the "Epiq Declaration" or "Epiq Decl." are to the Declaration of Michael McGuinness Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion, filed herewith; and (g) all page references are to a document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.

respect to the Class's claims against Defendants and the potential defenses thereto, and conferred with private investigators and consulting experts regarding various aspects of the claims. *See, e.g.,* Gonnello Decl. ¶¶21-24, 62.

The Class's reaction to the Settlement and Plan of Allocation to date has been positive. Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 64), the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), has *inter alia* mailed over 24,738 copies of the Notice and Proof of Claim and Release form to potential Class Members and nominees, posted the requisite documents to the Action's settlement website, and caused the Summary Notice to be published in *Investor's Business Daily* and posted to *PR Newswire.* Epiq Decl. ¶¶10, 13, 16; Gonnello Decl. ¶¶40-43. While the July 21, 2020 deadline for Class Members to object to the Settlement or request exclusion from the Class has not yet passed, as of July 7, 2020, no objections have been received. Epiq Decl. ¶¶17-19; Gonnello Decl. ¶46. The only request for exclusion received to date was submitted by a person who filed an opt-out action before the Settlement was reached and is not a Class Member in any event because his claims are explicitly excluded from this Settlement. *See* Gonnello Decl. ¶46 (citing Stipulation ¶1.13).

In light of the considerations discussed herein, Lead Plaintiff and Lead Counsel submit that the Settlement is fair, reasonable, and adequate; satisfies the standards of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and due process; and is in the best interests of the Class. Lead Plaintiff accordingly requests that the Court: (i) grant final approval of the Settlement; (ii) find that the notice program fully satisfied the requirements of Federal Rule of Civil Procedure 23(e), the PSLRA, 15 U.S.C. § 78u-4(a)(7), and the requirements of due process; (iii) find the Plan of Allocation to be a fair, reasonable, and

adequate method for distributing the Net Settlement Fund to Authorized Claimants; (iv) grant final certification of the proposed Class for settlement purposes; and (v) grant final appointment of Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel.

**FACTUAL AND PROCEDURAL BACKGROUND**

To avoid undue repetition, Lead Plaintiff respectfully refers the Court to the accompanying Gonnello Declaration for a detailed discussion of the factual background and procedural history of the Action, the efforts undertaken by Lead Plaintiff and his counsel during the course of the Action, the risks of continued litigation, and a discussion of the negotiations leading to the Settlement.  *See, e.g.,* Gonnello Decl. ¶¶1-36.

**ARGUMENT**

**I.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

Fed. R. Civ. P. 23(e) provides that any compromise of a class action must receive court approval.  A court should approve a class action settlement if it determines that the settlement is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014).  Consequently, when exercising discretion to approve a settlement, courts are "mindful of the strong judicial policy" in favor of class action settlements.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).  As the Second Circuit has explained, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *Maley v. Del Global*

3

*Techs. Corp.*, 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002) (quoting *Detroit v. Grinnell*, 495 F.2d 448, 462 (2d Cir. 1974)).

At the final approval stage, courts consider the factors in recently amended Rule 23(e)(2), which provides that a court may grant final approval of a proposed settlement:

> . . . only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A)   the class representatives and class counsel have adequately represented the class;
> (B)   the proposal was negotiated at arm's length;
> (C)   the relief provided for the class is adequate, taking into account:
>    (i)   the costs, risks, and delay of trial and appeal;
>    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D)   the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

As explained in the Preliminary Approval Motion,[2] amended Rule 23(e)(2)'s factors do not displace the factors that the Second Circuit previously used to determine whether a settlement is "fair, reasonable, and adequate"—the so-called "*Grinnell* factors." *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (applying the Rule 23(e)(2) factors along with the *Grinnell* factors at the final approval stage) (citing *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019), for the proposition that "the new Rule 23(e) factors [] add to, rather than displace, the *Grinne[ll]* factors[]")). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

---

[2]   "Preliminary Approval Motion" or "PA Motion" refers to Lead Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement, ECF No. 60.

establishing damages; (6) the risks of maintaining the class [action] through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Payment Card*, 330 F.R.D. at 29 (citing, *inter alia*, *Grinnell*, 495 F.2d at 463).  To find that a settlement is substantively fair, reasonable, and adequate, not every factor needs to be satisfied, but "rather, the court should consider the totality of these factors in light of the particular circumstances."  *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

As explained in the Preliminary Approval Motion, all of the requirements imposed by Rule 23(e)(2) and the relevant *Grinnell* factors have been met.  Courts that have analyzed the amended Rule 23(e)(2) factors have found that the factors are usually satisfied where, as here, little has changed between preliminary and final approval.  *See In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) (stating that the Court's previous orders granting preliminary approval of the settlements at issue "already explained in detail why the Rule 23 and *Grinnell* factors support approval[,]" readopting that analysis at the final approval stage, and focusing only on "those few developments since" preliminary approval that impact the analysis); *In re Chrysler-Dodge-Jeep Ecodiesel® Mtg., Sales Practices, & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the conclusions the court made in granting preliminary approval "stand and counsel equally in favor of final approval now").  Nevertheless, the factors are analyzed in detail below.

### A.    The Class Has Been Adequately Represented

Rule 23(e)(2)(A) is satisfied because Lead Plaintiff and Lead Counsel have adequately represented the Class throughout the litigation, and will continue to do so through the Settlement administration process.  Lead Plaintiff's interests are directly aligned with those of other Class

5

members, as he claims to have suffered damages from the same alleged conduct, and through those claims seeks the same recovery from Defendants. *See* PA Motion at 5-6 (explaining Lead Plaintiff's adequacy). Additionally, Lead Plaintiff has actively overseen the litigation every step of the way, having, *inter alia*, regularly reviewed filings in this Action, communicated with counsel about all aspects of the case, and approved the proposed settlement. *See* Gonnello Decl., Ex. F (Declaration of Fred Remer). Furthermore, Lead Counsel has zealously represented the Class at all times and is highly experienced in securities class action litigation. *See* Gonnello Decl., ¶¶55-65; PA Motion at 6 (explaining Lead Counsel's adequacy).

### B. The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the result of arm's-length negotiations between Lead Counsel and Defendants' counsel. Prior to engaging in negotiations with Defendants, Lead Counsel conducted considerable investigation and analysis of the hurdles facing this litigation, the facts and law supporting the claims against Defendants, and the defenses available to them. *See* Gonnello Decl. ¶¶21-22. Thereafter, Counsel engaged in a mediation session with Jed S. Melnick, Esq, a "highly qualified mediator," *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014), after submitting mediation statements and exhibits, and then worked over the subsequent months to finalize the terms of the Settlement Stipulation. Gonnello Decl. ¶¶23-24. The mediation process provides compelling evidence that the Settlement is not the product of collusion. *See Christine Asia*, 2019 WL 5257534, at *9 ("[T]he participation of a neutral and respected mediator is an indicator of a settlement's procedural fairness.") (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure")).

6

In this Circuit, a strong presumption of fairness attaches to a class action settlement, like this one, that is reached through arm's length negotiations among able and experienced counsel. *See, e.g., Yang*, 2014 WL 4401280, at \*5 (citing *Wal-Mart*, 396 F.3d at 116); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Accordingly, the Settlement is entitled to the presumption of procedural fairness under Second Circuit caselaw, and satisfies Rule 23(e)(2)(B).

### C.      The Relief Provided for the Class Is Adequate

Rule 23(e)(2)(C) requires the Court to determine whether the relief provided for the Class is adequate, taking four specific considerations into account.  Each of these considerations is addressed below, along with the *Grinnell* factors that overlap with them.

### 1.      The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of trial and appeal.  Fed R. Civ. P. 23(e)(2)(C)(i).  This inquiry overlaps with *Grinnell* factors one, four, and five: the "complexity, expense and likely duration of the litigation," the "risks of establishing liability" and "the risks of establishing damages."  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693-94 (S.D.N.Y. 2019) (noting the overlap).  These factors are addressed below.

#### a.      The Complexity, Expense, and Likely Duration of the Litigation

This Action would likely be complex, costly, and lengthy.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time

would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery."); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Defendants have denied any wrongdoing and would undoubtedly aggressively litigate this Action at each step. *See* Gonnello Decl. ¶15. Without this Settlement, the Action would have continued to be vigorously contested. Defendants would have filed a motion to dismiss, which are frequently granted in securities class actions. *See, e.g.,* Gonnello Decl., Ex. B at 20, Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA 2019) ("NERA Report") (finding that, of the securities class actions tracked from 2000-2018, 45% of motions to dismiss for which a court decision was reached were granted). There is therefore a material risk that a motion to dismiss in this Action would have been granted, or that the Action would have required the filing of an amended consolidated complaint before even getting to the discovery stage.

Even if the Action survived a motion to dismiss, the fact discovery process would likely be time-consuming and expensive. *See* Gonnello Decl. ¶¶25-28. For example, this Action involves, *inter alia*, nonpublic contractual arrangements that the Company had with certain customers over a four-year period, and how the applicable accounting rules allowed revenue from these arrangements to be recorded. *See, e.g.*, *Remer* Complaint ¶¶51, 55, 57.[3] As a result, the fact discovery process would require, among other things, numerous document subpoenas to

---

[3]     The "*Remer* Complaint" refers to the complaint filed in *Remer v. Revolution Lighting Technologies, et al.*, 1:19-cv-04252 (S.D.N.Y.), which was consolidated into this Action. *See Remer* Docket, ECF No. 1 (*Remer* Complaint), ECF No. 45 (consolidation order).

third parties, which are notoriously difficult to enforce; retention of accounting and financial expert witnesses; discovery motion practice; production and review of thousands of pages of documents; and taking numerous depositions.  *See* Gonnello Decl. ¶¶27-28.

The parties would also have to brief motions for class certification and summary judgment, and prepare for trial, which would likely "be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court[.]"  *Christine Asia*, 2019 WL 5257534, at \*10.  Even a favorable judgment could be the subject of post-trial motions and appeals, delaying any payment to Class Members even if Lead Plaintiff were to prevail at trial.  *See Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class.").  Thus, the complexity, expense, and likely duration of the Action weigh in favor of final approval of the Settlement.

**b.      The Risks of Establishing Liability at Trial and Damages**

Securities class action cases are particularly "difficult and notoriously uncertain" with respect to both liability and damages issues.  *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999); *see also In re FLAG Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at \*15 (S.D.N.Y. Nov. 8, 2010) (similar).  This Action would be no exception, as it involves complex securities fraud rules, statutes, and accounting rules.  *See* Gonnello Decl. ¶¶13, 25-29; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at \*7 (S.D.N.Y. Nov. 7, 2007) (noting that the involvement of "complex issues of accounting and internal financial controls which could be difficult to present and prove to a jury" was a risk that supported settlement).  For example, to prove his case at trial, Lead Plaintiff would need to rely on expert witnesses for analysis of key issues, such as how the applicable accounting rules allowed revenues from the Company's contractual arrangements to

9

be recorded.  *See* Gonnello Decl. ¶¶13, 27.

Additionally, the damages issues present in this case would boil down to a "battle of the experts" at trial, creating the risk that the jury may believe Defendants' expert over Lead Plaintiff's and find in Defendants' favor.  Gonnello Decl. ¶29; *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *8 (S.D.N.Y. July 27, 2007).  Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise.  *See generally In re American Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (stating that "[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *see also PaineWebber*, 171 F.R.D. at 129.

Thus, although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action are meritorious and would be borne out by the evidence, continuing the Action poses significant risks and additional costs that could result in the Class recovering nothing, let alone the certainty of the proposed $2,083,333.33 Settlement here, with a Company that faces material insolvency risks.

### 2.    The Proposed Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims. The method used in this Action is that traditionally used in securities class actions.  Pursuant to the Preliminary Approval Order, beginning on May 11, 2019, 24,738 copies of the Notice and Proof of Claim were mailed to potential Class Members and nominees, and the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* on May 25, 2020. Epiq Decl. ¶¶6 ,10, 13.  Class Members have until July 21, 2020 to object to the Settlement or

10

request exclusion from the Class. Although that date has not yet passed, to date, there have been no objections to the Settlement, and only one request for exclusion has been received. *Id.* ¶¶17-19. That request was submitted by one of the opt-out plaintiffs in the action captioned *Graham v. Revolution Lighting Technologies, Inc., et al.*, Case No. 19-cv-8337 (S.D.N.Y.), who is not a Class Member in any event because his claims are explicitly excluded from this Settlement. *See* Gonnello Decl. ¶46. Additionally, the Settlement's claims process is similar to the process commonly used in securities class action settlements, and provides for cash payments to eligible class members based on their *pro rata* share of the recovery as established by the trading information eligible class members provide. This factor supports final approval for the same reason that it supported preliminary approval. *See* PA Motion at 9-10.

### 3. Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." Consistent with the Notice, and as discussed in the Fee Motion,[4] Lead Counsel seeks an award of attorneys' fees in an amount of 33.33% of the Settlement Fund, which is in line with recent fee awards in this District. *See, e.g., In re iDreamsky Tech. Ltd. Sec. Litig. Sec. Litig.*, No. 1:15-cv-2514(JPO), 2018 WL 8950640, at *4 (S.D.N.Y. Apr. 6, 2018) (Oetken, J.) (awarding attorney's fees of 33.3%);[5] *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19,

---

[4]  "Fee Motion" refers to Lead Counsel's Memorandum of Law in Support of Motion for (1) an Award of Attorney's Fees and Expenses and (2) an Award for Lead Plaintiff, filed concurrently herewith.

[5]  The memorandum of law filed in *iDreamsky* in support of the fee award makes clear that the amount of attorneys' fees awarded, $1,383,333.33, represented one-third of the $4.15 million settlement amount. *See In re iDreamsky Tech. Ltd. Sec. Litig. Sec. Litig.*, No. 1:15-cv-2514(JPO), ECF No. 105 at 1 (Feb. 27, 2018).

2014) (approving requested fee of 33 ⅓% of the $3.8 million settlement amount and collecting cases awarding that percentage).

Pursuant to the Stipulation, attorneys' fees are to be paid to Lead Counsel "within ten (10) calendar days" of the Court awarding such fees, Stipulation ¶6.2, subject to Lead Counsel's obligation to repay in the event that such award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, Stipulation ¶6.3.  The timing of payment is standard in class action cases and typically approved.  *See, e.g., In re China MediaExpress Holdings, Inc. Shareholder Litig.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *2 (S.D.N.Y. Sept. 18, 2015) (awarding fees to class counsel to be paid "from the Settlement Fund within ten calendar days" of the entry of the final judgment or the fee order, if later, subject to an obligation to repay if the fee award does not become final or the settlement is voided, terminated, cancelled, reversed or modified); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479-80 (S.D.N.Y. 1998) (overruling objection regarding timing of fee award, stating, "[n]umerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter[,]" and collecting cases); *In re LivingSocial Marketing and Sales Practice Litig.*, 298 F.R.D. 1, 22 n.25 (D.D.C. 2013) (overruling objection to the "'quick pay' provision that allows class counsel to be paid in short order, even if an appeal is taken," as there is "ample authority" for it, and collecting cases).

### 4.    Related Agreements

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it.  As disclosed in the Preliminary Approval Motion, the only such agreement is the parties' confidential Supplemental Agreement, which gives Defendants the option "to terminate the Settlement in the event that a particular confidential threshold of Class Members subject to this Settlement exclude themselves from the

12

Class[.]"  PA Motion at 11 (citing Stipulation ¶7.4); *Christine Asia*, 2019 WL 5257534, at *15 (explaining that such agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

### D.        The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  That is exactly what the Settlement is designed to do.

As discussed in Section II, *infra*, the Plan of Allocation treats Class members equitably relative to each other, based on the timing of their purchases and acquisitions of Revolution Lighting securities, and by providing that each Authorized Claimant shall receive their *pro rata* share of the Net Settlement Fund based on their recognized losses.  Due to the difficulty in calculating damages for option traders, the Plan of Allocation limits cumulative payments of all claims associated with call options to 1% of the Net Settlement Fund, as call options account for less than 1% of the combined dollar trading volume of Revolution Lighting securities during the Class Period.  *See* Epiq Decl., Ex. A at 13 & 13 n.3.[6]  This means that if the cumulative Recognized Loss amounts for call option claims exceed 1% of all Recognized Losses, the Recognized Loss for call option claims will be reduced proportionately until they collectively equal 1% of all Recognized Losses.  *Id.*  Courts often find such limitations on options claims to be fair and reasonable.  *See, e.g., In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 264 (D.N.H. 2007) (overruling objection to the plan of allocation's limitation of losses from

---

[6]        *Cf. In re Valeant Pharms. Int'l Inc., Sec. Litig.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *10 (D.N.J. June 15, 2020) (Report & Recommendation of the Special Master) (explaining that the treatment of options in the plan of allocation, which included allocating a maximum of 5% of the Net Settlement Fund to options, was appropriate because, *inter alia*, "options values naturally diminish over time and the complex option price dynamics makes it difficult to differentiate between fraud- and non-fraud based factors[,]" and that such treatment "is a generally accepted and widely used methodology for equitably allocating a settlement fund in light of the differentiating factors affecting options damages[]").

option trading to 1% of the settlement amount); *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 WL 3096079, at *9 (N.D. Cal. Nov. 15, 2005) (finding limitation on total recovery by options traders to 2% of the settlement proceeds to be "fair and reasonable"), *vacated in part on other grounds*, 496 F.3d 962 (9th Cir. 2007).  Thus, the Settlement treats class members equitably.

>            **E.        The Stage of the Proceedings and the Extent of Discovery Completed**

The Settlement was achieved after Lead Counsel, *inter alia*: (a) conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, earnings conference calls, analyst presentations, and documents received pursuant to a Freedom of Information Act request; (b) retained a private investigator to conduct an investigation; (c) prepared a detailed amended complaint to be filed in the event that mediation was not successful; (c) consulted with a damages consultant to evaluate the Class's damages; (d) thoroughly researched the law relevant to Lead Plaintiff's claims; (e) participated in a mediation session; and (f) finalized the terms of the Stipulation with Defendants in the months following. *See* Gonnello Decl. ¶¶21-24.

The Settlement was reached only after the parties had a comprehensive understanding of the potential risks and hurdles in continued litigation of this Action.  For example, as part of Lead Counsel's investigation into the relevant facts and law, Lead Counsel contemplated the strengths and weaknesses of each element that Lead Plaintiff would need to plead and prove to prevail on his claims.  If the litigation continued, Lead Plaintiff would have to plead and prove, *inter alia*, that Defendants' alleged misrepresentations and omissions were made with scienter. *See Christine Asia*, 2019 WL 5257534, at *12.  Scienter "is often the most difficult and controversial aspect of a securities fraud claim," *id.*, and Lead Counsel believes that this element

14

would be vigorously contested in this Action.  Although Revolution Lighting has admitted that it incorrectly recognized revenue from 2014 through the second quarter of 2018, and that it had a material weakness in internal controls with respect to revenue recognition, the Company's Audit Committee has purportedly found that the CEO, defendant LaPenta, did not have knowledge of the accounting issues that are part of the allegations in the Action.  *See* Gonnello Decl. ¶¶18, 31.

As a result, Defendants would no doubt raise numerous challenges with respect to the Action's scienter allegations, posing a material risk that the Action would be dismissed at a later stage of the litigation, or at least require the parties to engage in an expensive, lengthy battle on this issue that would prolong the litigation and further deplete the Company's available insurance.  *See* Section I.H, *infra*.  Although Lead Plaintiff and Lead Counsel strongly believe that the claims in the Action are meritorious, they acknowledge that the Court—or a jury—could disagree, leaving the Class with a lesser recovery than that provided by the Settlement, or none at all.

Thus, although the Settlement was achieved early in the litigation, Lead Plaintiff and Lead Counsel had gathered sufficient information regarding the strengths and weaknesses of the claims to meaningfully evaluate the decision to settle.  *See Yang*, 2014 WL 4401280, at *7 (finding that this factor supported settlement where "Plaintiff and Lead Counsel have some knowledge of the strengths and weaknesses of Plaintiff's claims and considerable knowledge about the limits on their ability to recover anything for the Class if they win . . . "); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) (explaining that *Grinnell* factor number three, "the stage of the proceedings and the amount of discovery completed[,] is intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them"); *Rieckborn v. Velti PLC*, No. 13-cv-03889-

WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding that "[d]espite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant facts and law[,]" even though settlement was reached prior to even the filing of a motion to dismiss).

### F.    The Risks of Maintaining the Class Action Through Trial

While Lead Plaintiff and Lead Counsel are confident that the class meets the requirements for certification, *see* Section IV, *infra*, the Class has not yet been certified and Lead Plaintiff is aware that there is a risk the Court could disagree.

For example, to prevail on a motion for class certification, Lead Plaintiff must show that common issues predominate over individual ones. *See* Rule 23(b)(3); *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 76-77 (S.D.N.Y. 2015). To meet this burden, Lead Plaintiff would need to establish that the putative Class can invoke the fraud-on-the-market presumption of reliance, which would require him to show, *inter alia*, that the market for Revolution Lighting securities was efficient during the Class Period. *See id.* at 77. At the class certification stage, Defendants might argue that the market for Revolution Lighting securities was not efficient because its trading volume was lower in comparison to that of companies with larger market capitalizations. *See id.* at 91 (finding that a securities' high "average weekly trading volume" supported market efficiency). Defendants also might attempt to rebut the presumption of reliance by arguing that the stock drops following the corrective disclosures alleged in the Action were not statistically significant and therefore do not show price impact. *See, e.g., Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 46-47 (S.D.N.Y. 2018) (discussing defendants' rebuttal arguments on price impact and statistical significance).

Even if the Court were to certify the Class, there is always a risk that the Class could be decertified at a later stage in the proceedings. *See Frank v. Eastman Kodak, Co.*, 228 F.R.D.

16

174, 186 (W.D.N.Y. 2005) (acknowledging that while plaintiffs might ultimately prevail on class certification were the settlement disapproved, "the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement[]"). Thus, the risks and uncertainty surrounding Class certification also supports approval of the Settlement. *See Advanced Battery*, 298 F.R.D. at 176 (stating that "[c]lass certification would have presented additional complexities and obstacles[]" that weighed in favor of final approval of the settlement).

### G.    The Reaction of the Class

The Class's reaction to the Settlement "is considered perhaps the most significant factor to be weighed in considering its adequacy." *Veeco*, 2007 WL 4115809, at *7. In fact, the "absence of objections may itself be taken as evidencing the fairness of a settlement." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014).

To date, a total of 24,738 copies of the Notice have been mailed to potential Class members and nominees, and the Summary Notice was published in *Investor's Business Daily* and *PR Newswire* on May 25, 2020. *See* Epiq Decl. ¶¶10, 13. Despite this large number of potential Class Members, not objections have been received. Gonnello Decl. ¶46. As of July 6, 2020, the Claims Administrator has received only one request for exclusion, Epiq Decl. ¶18, which was submitted by the opt-out plaintiff who is not a Class Member because his claims are explicitly excluded from this Settlement, Gonnello Decl. ¶46.

Although the deadline to submit objections and exclusions (July 21, 2020) has not yet passed, the reaction of the Class so far supports final approval of the Settlement. *See Christine Asia*, 2019 WL 5257534, at *11 (finding that the class's reaction to the settlement supported approval where only a "few" class members opted out).

17

### H.      The Ability of Defendants to Withstand a Greater Judgment

Lead Counsel believes that the possibility of achieving a greater recovery than that provided by the Settlement is unlikely.  The Settlement Amount will be funded by Defendants' insurer.  *See* Stipulation ¶2.1.  At the time of the settlement negotiations, the available insurance was limited and was being depleted by costs related to an ongoing SEC investigation into Revolution Lighting and several derivative actions.  *See* Gonnello Decl. ¶31; *see Maley*, 186 F. Supp. 2d at 365 (noting the depletion of the defendants' insurance policies as a factor in evaluating whether a greater recovery could have been obtained); *Advanced Battery*, 298 F.R.D. at 178 (noting that the defendants' "minimal insurance coverage" supported approval of the settlement).  If the additional litigation of this Action were to deplete all of the insurance at a later stage of the proceedings after significant time and energy had been invested to reach a resolution, the Class might be left with only the Company and the Individual Defendants as sources of recovery.  Gonnello Decl. ¶31.

Additional recovery from the Company is unlikely in light of its financial position.  As explained in further detail in the Gonnello Declaration, Revolution Lighting's delinquent SEC filings and decimated stock price led to it being delisted from the Nasdaq.  *See id.*  The Company thereafter noted in November 2019 that it "will likely need additional funding to continue its operations beyond the first quarter of 2020."  *Id.*  This need was echoed in a recent SEC filing, which explained that as of June 1, 2020, the Company estimated it had $1.6 million of available liquidity, and "will likely need additional funding to continue its operations."  *Id.*

Additional recovery from the Individual Defendants is unlikely given that it would require establishing their individual roles in the alleged fraud, including their respective scienter. As explained in Section I.E., *supra*, Lead Counsel believes this would be an uphill battle considering, *inter alia*, that the Company's Audit Committee purportedly concluded that

18

defendant LaPenta did not have knowledge of the accounting issues that are part of the allegations in the Action. *See id; see also Maley*, 186 F. Supp. 2d at 365 (finding that greater recovery was unlikely given the company's financial condition and the difficulty of establishing the individual defendants' liability under the securities laws).

In any event, even if Defendants could withstand a greater judgment, this factor is generally not determinative where, as here, "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (affirming district court's decision to approve the proposed settlement even though the "defendants' ability to withstand a higher judgment weighed against the settlement").

## I.      The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the Settlement Amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the settlement falls within a "range of reasonableness." *See PaineWebber*, 171 F.R.D. at 130. This "range" has been described by the Second Circuit as one that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the $2,083,333.33 Settlement Amount represents approximately 5.78% of the Class' maximum potential damages (assuming all claims and damages were proven) that Lead Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent activity. *See* Gonnello Decl. ¶58. This is materially higher than the median ratio of settlement amounts to investor losses for 2018, which NERA Economic Consulting determined was 2.6%.

19

*See* Gonnello Decl. ¶58, Ex. B (NERA Report) at 36.  This result is well within the range of typical recoveries in complex securities litigation.  *See, e.g.*, *In re Citigroup Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (determining settlement amount equal to 2% of the class's estimated losses "falls squarely within this range of reasonableness"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (finding settlement equal to 2% of aggregate expected recovery to be reasonable); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in complex securities class actions range from 1.6% to 14% of estimated damages).

Given the great risk and expense of continued litigation, the proposed Settlement offers the opportunity to provide immediate relief to the Class, rather than a speculative payment years in the future.  *See In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, No. MDL 1500, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"); *Maley*, 186 F. Supp. 2d at 366-67.

Accordingly, Lead Plaintiff respectfully submits that the Settlement's immediate cash benefit is well "within the range of reasonableness" in light of the best possible recovery and all the attendant risks of litigation.

## II.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The standard for approval of the Plan of Allocation is the same as that for approving the settlement: "it must be fair and adequate."  *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).  Generally, "the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable under the particular circumstances of the case."  *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775(JG)(VVP), 2015 WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015).  "Allocation formulas, including certain discounts for

20

certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim," and "[t]here is no rule that settlements benefit all class members equally." *Veeco*, 2007 WL 4115809, at *13. "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable rational basis." *Advanced Battery*, 298 F.R.D. at 180.

In developing the Plan of Allocation, which is set forth in the Notice, Lead Plaintiff enlisted the help of a damages consultant, Stanford Consulting Group, Inc. ("SCGI"), who was familiar with the various damages issues in this Action, as well as the Claims Administrator which has many years of experience implementing plans of allocation in securities class actions. *See* Gonnello Decl. ¶53. The Plan of Allocation's objective is to distribute a *pro rata* share of the Net Settlement Fund to Authorized Claimants based upon their respective losses attributable to the alleged fraud, consistent with the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). In *Dura*, the Supreme Court stated that securities fraud plaintiffs must prove that "defendant's misrepresentations caused the loss for which the plaintiff seeks to recover." *Id.* at 345-56. Consistent with *Dura*, the Plan of Allocation does not compensate Class Members for losses resulting from "in and out transactions"—*i.e.,* losses suffered on sales made before any corrective disclosures—but only for those losses attributable to the alleged fraud and stock drops alleged. *See Dura*, 544 U.S. at 342 (explaining that if "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss[]").

Specifically, after Authorized Claimants submit their Proof of Claim forms and supporting documents, the Claims Administrator will calculate each Authorized Claimants' Recognized Loss according to a formula that will take into account when and at what price they

21

purchased or otherwise acquired Revolution Lighting securities and when such securities were sold. *See* Gonnello Decl. at ¶50. In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have purchased or otherwise acquired Revolution Lighting common stock or call options during the Class Period and held their securities through at least one of the corrective disclosures set forth in the Plan of Allocation as derived from the *Remer* Complaint. *See id*. at ¶51. The amount recovered will vary depending upon when in relation to the corrective disclosures each security was sold. *See id*.

The Plan of Allocation also provides that the total payments associated with call options are limited to 1% of the Net Settlement Fund, commensurate with the relative trading volumes of Revolution Lighting stock and call options during the Class Period as determined by SCGI. *See* Section I.D, *supra* (explaining this limitation).

The terms of the Plan of Allocation were fully disclosed in the Notice that was mailed to 24,738 potential Class Members and nominees and posted on the Action's website. *See* Gonnello Decl. ¶54. To date, there have been no objections to the Plan. *See id.* at ¶54. Thus, for the reasons set forth herein and in the Gonnello Declaration, Lead Plaintiff respectfully requests that the Court approve the Plan of Allocation as fair, reasonable, and adequate. *See Veeco*, 2007 WL 4115809, at *13-14 (approving plan of allocation where no class members objected to it and it was consistent with *Dura* because "it provides for the distribution of the Net Settlement Fund on a proportionate basis, using a formula based on the decline in the price of Veeco stock following the disclosure[]"); *Christine Asia*, 2019 WL 5257534, at *15 (finding a plan of allocation "fair and adequate" where it "has a clear rational basis, equitably treats the class members, and was devised by experienced and estimable class counsel[]"); *Patel v. Axesstel*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015)

22

(finding Plan of Allocation to be "fair, reasonable, and adequate[,]" where it "allocates the settlement fund proportional to the actual injury of each class member[]").

### III. THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS

Notice of a class action settlement must meet the requirements of Rule 23, the PSLRA, and the due process clause of the United States Constitution. Rules 23(c)(2)(B) and 23(e)(1) require the Court to direct to potential settlement class members "the best notice that is practicable under the circumstances" and "in a reasonable manner." The PSLRA and the due process clause impose similar requirements.

The Court preliminarily approved the form, content, and method of dissemination of the Notices provided to potential Class Members. *See* Gonnello Decl. ¶39, Ex. A. Pursuant to the Preliminary Approval Order, the Notice and Proof of Claim and Release form have been mailed to 24,738 potential Class Members and nominees beginning on May 11, 2020. *See* Epiq Decl. ¶¶6, 10; Gonnello Decl. ¶41. That same day, the Notice and Proof of Claim form were also made available on the settlement website, along with the Stipulation and its exhibits, and the Preliminary Approval Order. *See* Epiq Decl. ¶16; Gonnello Decl. ¶43. The Summary Notice was published in *Investor's Business Daily* and posted by *PR* Newswire on May 25, 2020. *See* Epiq Decl. ¶13; Gonnello Decl. ¶41. Additionally, Epiq has set up a toll-free telephone helpline to accommodate potential Class Members who have questions regarding the Settlement. *See* Epiq Decl. ¶¶14-15; Gonnello Decl. ¶42.

Pursuant to the requirements of Rule 23, the due process clause, and the PSLRA, the Settlement Notice included: (i) the case caption; (ii) a description of the Action's claims; (iii) a description of the settlement Class; (iv) the names of counsel for the settlement Class; (v) the maximum amount of attorneys' fees, expense reimbursement, and the compensatory award for

Lead Plaintiff that will be sought; (vi) the Final Approval Hearing date; (vii) a description of the

Class Members' opportunity to appear at the Final Approval Hearing; (viii) a statement of the

deadline for filing objections to and exclusions from the Settlement; (ix) the consequences of

exclusion; (x) the consequences of remaining in the Settlement Class; and (xi) the manner in

which to obtain more information. *See* Epiq Decl., Ex. A at 1-9; Gonnello Decl. ¶44.

Courts in this Circuit have routinely found that this method of mailing, publication, and

Internet notice satisfies the applicable notice standards in similar class actions. *See, e.g.*,

*Christine Asia*, 2019 WL 5257534, at \*16; *In re Virtus Investment Partners, Inc. Sec. Litig.*, No.

15CV1249, 2018 WL 6333657, at \*4 (S.D.N.Y. Dec. 4, 2018).  Thus, Lead Plaintiff respectfully

requests that the Court find the notice program satisfies the requirements of Rule 23, the PSLRA,

and due process.

## IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Pursuant to the Preliminary Approval Order, the Court conditionally certified the Class

for Settlement Purposes. *See* PA Order at ¶2.  Since the entry of that Order, no circumstances

have changed to alter the propriety of the Court's certification and appointments. *See In re Bear*

*Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012)

(finally certifying a settlement class where there had been no material changes since the court

preliminarily certified the class).  Thus, pursuant to Rules 23(a) and (b)(3), and for reasons set

forth below and in further detail on pages 16-22 of the Preliminary Approval Motion, Lead

Plaintiff respectfully requests that the Court finally certify the following Class for purposes of

Settlement:

> All Persons who purchased or otherwise acquired the publicly traded securities of
> Revolution Lighting between March 14, 2014 and November 14, 2018, inclusive,
> and were damaged thereby.  Excluded from the Class are: (a) Persons who
> suffered no compensable losses, *e.g.*, those who purchased or acquired Revolution
> Lighting securities during the Class Period but sold prior to any alleged partial

24

corrective disclosure; (b) Defendants; (c) the officers and directors of the Company at all relevant times; (d) members of any Defendant's immediate families; (e) any entity in which Defendants have or had a controlling interest; (f) the legal representatives, heirs, successors, and assigns of such excluded parties; and (g) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

Stipulation ¶1.4.   Lead Plaintiff also respectfully requests that the Court appoint Fred Remer as Class Representative and the Faruqi Firm as Class Counsel as they have adequately represented the Class throughout the Action and will continue to do so.

### CONCLUSION

For the reasons stated above, Lead Plaintiff respectfully requests that the Court: (a) grant final approval of the Settlement; (b) find that the notice program fully satisfied the requirements of Federal Rule of Civil Procedure 23(e), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and the requirements of due process; (c) find the Plan of Allocation to be a fair, reasonable, and adequate method for distributing the Net Settlement Fund to Authorized Claimants; (d) grant final certification of the proposed Class for settlement purposes; and (e) grant final appointment of Lead Plaintiff as Class Representative and the Faruqi Firm as Class Counsel for settlement purposes.

Dated:  July 7, 2020

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:_____*/s/ Richard W. Gonnello*
         Richard W. Gonnello

Richard W. Gonnello
Katherine M. Lenahan
Sherief Morsy
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 983-9331
E-mail: rgonnello@faruqilaw.com
         klenahan@faruqilaw.com

25

smorsy@faruqilaw.com

*Attorneys for [Proposed] Class Representative Fred Remer and [Proposed] Class Counsel for the putative Class*

26