**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: REVOLUTION LIGHTING
TECHNOLOGIES, INC. SECURITIES
LITIGATION

No. 1:19-cv-00980-JPO

**DECLARATION OF RICHARD W. GONNELLO IN SUPPORT OF LEAD
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT AND LEAD COUNSEL'S MOTION FOR (1) AN AWARD OF
ATTORNEYS' FEES AND EXPENSES AND (2) AN AWARD FOR LEAD PLAINTIFF**

I, Richard W. Gonnello, declare as follows:

1.      I am a member in good standing of the bar of the State of New York and am admitted to this Court.  I am a partner in the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm" or "Lead Counsel"), which represents Lead Plaintiff Fred Remer and the proposed Class in the above-captioned securities class action pending in this Court (the "Action").[1]  I have been actively involved in the prosecution of this Action and have personal knowledge of the matters set forth herein based upon my close supervision and participation in the Action.  If called upon, I could and would competently testify that the following facts are true and correct.

_____

[1]      Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated March 18, 2020 ("Stipulation"), ECF No. 58; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; (e) all references to the "Epiq Declaration" or "Epiq Decl." are to the Declaration of Michael McGuinness Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion; and (f) all page references are to a document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.

## I.    PRELIMINARY STATEMENT

2.    I respectfully submit this Declaration in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement ("Final Approval Motion"), as well as Lead Counsel's Motion for (1) an Award of Attorneys' Fees and Expenses and (2) an Award for Lead Plaintiff ("Fee Motion").  Both motions are filed concurrently herewith.

3.    Lead Plaintiff, on behalf of himself and the putative Class, and defendants Revolution Lighting Technologies, Inc. ("Revolution Lighting," "RVLT," or the "Company"), Robert V. LaPenta, Charles J. Schafer, and James A. DePalma (collectively, "Defendants") have reached a proposed settlement of this Action for $2,083,333.33 in cash that, if approved, will resolve all claims in the Action.

4.    The terms of the Settlement are set forth in the Stipulation.  The Court preliminarily approved the Stipulation by its Order Preliminarily Approving Settlement and Providing for Notice, dated April 10, 2020 (ECF No. 64) ("Preliminary Approval Order"), a true and correct copy of which is attached hereto as *Exhibit A*.

5.    This declaration sets forth the nature of the claims asserted, the procedural history of the Action, and the methods by which the Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and the Plan of Allocation are fair, reasonable, and adequate, and why Lead Counsel's application for attorneys' fees, reimbursement of expenses, and award for Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4) should be approved.

6.    While Lead Counsel believes that the allegations in the Action have substantial merit, Lead Counsel respectfully submits that the Settlement represents a favorable result for the Class.

7.    The Settlement is the result of extensive arm's-length and contentious settlement negotiations among experienced and capable counsel with a comprehensive understanding of the

merits and value of the claims asserted.  With the assistance of an esteemed mediator, counsel met for an in-person mediation session to vigorously debate the strengths and weaknesses of the claims and defenses in the Action.  The parties came to an agreement in principle during the mediation session and thereafter engaged in negotiations over the following months to finalize the terms of the Stipulation.  Lead Counsel's ability to come to a compromise in light of the many complex issues present in this Action evidenced the skill of representation and the quality of the results.

8.        Pursuant to the Preliminary Approval Order, beginning on May 11, 2020, the Notice and Proof of Claim and Release form were mailed to 24,738 potential Class Members and nominees, and were made available on the designated settlement website, www.Revolution LightingSecuritiesLitigation.com, along with the Stipulation and Preliminary Approval Order. *See* Epiq. Decl., ¶¶6, 10, 16.  The Summary Notice was timely published in Investor's Business Daily on May 25, 2020 and posted by *PR Newswire* on the same day.  *See id.* ¶13.

9.        For over a year, Lead Counsel has successfully overcome the significant obstacles that this Action has presented and adeptly navigated the complicated issues of law and fact inherent to a securities class action.  The Settlement provides an immediate and certain benefit to the Class considering the significant risks that a smaller recovery—or, indeed, no recovery at all—might be achieved after a trial and the likely appeals that would follow, which could prolong the Action for years and incur significant additional expenses.  For these reasons, and those set forth more fully below, Lead Counsel respectfully submits that the Settlement is in the best interests of the Class and should be approved as fair, reasonable, and adequate.

10.       Lead Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, the award of attorneys' fees in the amount of $694,375

plus accrued interest, reimbursement of expenses in the amount of $49,640.94, and an award for Lead Plaintiff in the amount of $10,000 as fair and reasonable.  The fee award constitutes 33.33% of the Settlement Fund, which is in line with the amount of attorneys' fees awarded by courts in this Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the risks of representing the Class in this Action.  The expenses incurred by Lead Counsel were reasonable and necessary to prosecute this Action and to reach this favorable result for the Class.  Lead Plaintiff also worked diligently to serve the Class throughout this litigation.

## II.    SUMMARY OF LEAD PLAINTIFF'S CLAIMS

11.    This Action arises out of Defendants' allegedly false and/or misleading statements that are alleged to violate §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.  *See, e.g., Remer* Complaint[2] ¶¶1-14, 78-94.

12.    Revolution Lighting designs and manufactures light-emitting diode lighting solutions for industrial, commercial, and government markets.  *Remer* Complaint ¶2.

13.    The complaints on file in the Action allege that during the Class Period, Defendants made false and/or misleading statements about Revolution Lighting's revenue, revenue recognition policies, the effectiveness of the Company's internal controls, and the Company's business prospects.  *See, e.g., Remer* Complaint at ¶¶1-14, 28-59.  Meanwhile, Defendants failed to disclose that, *inter alia*, (1) the Company had been improperly recognizing revenue associated with certain transactions and, as a result, its financial statements for

---

[2]    The "*Remer* Complaint" refers to the complaint filed by Lead Plaintiff in *Remer v. Revolution Lighting Technologies, Inc., et al.*, 1:19-cv-04252 (S.D.N.Y.), which was consolidated into this Action on July 29, 2019.  *See Remer* Docket, ECF No. 1 (*Remer* Complaint), ECF No. 14 (consolidation order).

numerous periods from 2014 through 2018 were misstated; (2) the Company lacked adequate internal controls over financial reporting with respect to revenue recognition; (3) and consequently, the Company would be subject to regulatory scrutiny and would incur substantial costs.  *See id.* at ¶¶13, 52.

14.      As alleged in the *Remer* Complaint, the true facts concealed by Defendants came out gradually over time in disclosures on September 22, 2017, August 2, 2018, October 17, 2018, October 19, 2018, and November 14, 2018, each of which led to a decline in the price of Revolution Lighting's common stock.  *See id.* at ¶¶3-12, 44-45, 48-49, 53-59.

15.      Defendants have denied, and continue to deny, each and every claim and contention alleged by Lead Plaintiff in the Action.  Defendants have expressly denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. Defendants believe that Lead Plaintiff's allegations of fraud have no merit and that a class could not be certified under Rule 23.  Defendants have also denied, and continue to deny, *inter alia*, the allegation that Lead Plaintiff or the Class have suffered damage, that the price of Revolution Lighting securities was artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, or that Lead Plaintiff or the Class was harmed by the conduct alleged in the Action.  *See, e.g.*, Stipulation at 2-3.

## III.     PROCEDURAL HISTORY

16.      Beginning on January 31, 2019, four putative securities class actions were filed in the United States District Court for the Southern District of New York, asserting claims against Defendants for violations of the federal securities laws under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  *See Glavan v. Revolution Lighting Technologies, Inc., et al.*, No. 1:19-cv-00980-JPO

(S.D.N.Y.); *Hubner v. Revolution Lighting Technologies, Inc., et al.*, No. 1:19-cv-02308-JPO (S.D.N.Y.); *Bishop v. Revolution Lighting Technologies, Inc., et al.*, No. 1:19-cv-02722-JPO (S.D.N.Y.); *Remer v. Revolution Lighting Technologies, et al.*, 1:19-cv-04252 (S.D.N.Y.) ("*Remer* Docket").

17.     On July 29, 2019, the Court consolidated the actions under the caption *In re: Revolution Lighting Technologies, Inc. Sec. Litig.*, No. 1:19-cv-00980-JPO (S.D.N.Y.), and appointed Fred Remer as Lead Plaintiff and the Faruqi Firm as Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3). *See* ECF No. 45 at 11-12; *Remer* Docket, ECF No. 14.

18.     Revolution Lighting has admitted that it incorrectly recognized revenue from 2014 through the second quarter of 2018, and that it had a material weakness in internal controls with respect to revenue recognition. *See* RVLT, Current Report (Form 8-K) at 3-4 (June 20, 2019) ("June 20, 2019 Form 8-K"). It has also announced that it will need to restate many of its financial statements for 2014-2018, *see id.* at 2, 4-5, which it has not yet done. As a result of these issues and the SEC's ongoing investigation into the Company's revenue recognition practices, the Company has not filed any of its required quarterly or annual SEC filings since August 10, 2018. *See* RVLT, Notification of Late Filing (Form 12b-25) (Nov. 13, 2018), (Mar. 27, 2019), (May 10, 2019), (Aug. 12, 2019). Its delinquent SEC filings and its decimated stock price led to the Company being delisted from the Nasdaq, effective October 14, 2019. *See* RVLT, Current Report (Form 8-K) (Oct. 10, 2019).

19.     The parties agreed to mediate and filed a joint stipulation on August 5, 2019 informing the Court that they would attempt to mediate the case on September 26, 2019. ECF No. 47. The joint stipulation also set forth a proposed schedule for updating the Court regarding

the status of the case, and for filing an amended complaint and motion to dismiss briefing in the event that the mediation was unsuccessful. *Id.* The Court issued an Order on the joint stipulation the following day, endorsing the proposed schedule. ECF No. 48.

20. On August 21, 2019, the Parties filed a joint stipulation informing the Court that due to the mediator's scheduling conflict, the parties agreed to move the mediation from September 26, 2019 to October 17, 2019, but kept the schedule for, *inter alia*, filing an amended complaint that was previously endorsed by the Court. ECF No. 49. The Court issued an Order on the Stipulation the following day, endorsing the proposed schedule. ECF No. 50.

## IV.   THE SETTLEMENT

### A.   Settlement Negotiations

21. From the outset, Lead Counsel has tirelessly navigated the complicated issues present in the Action. Prior to engaging in settlement negotiations, Lead Counsel spent considerable time evaluating the facts and argument available in this Action through the following: (1) conducting an extensive investigation into the facts alleged in the Action, including retaining an investigator to conduct an investigation, as well as reviewing press releases, online and newspaper articles, SEC filings, conference call transcripts, analyst reports, stock price movements, and documents received from the Occupational Safety and Health Administration pursuant to a Freedom of Information Act request submitted by Lead Counsel; (2) preparing a detailed amended complaint to be filed in the event that mediation was not successful; (3) conducting complex legal research in connection with drafting the detailed amended complaint and preparing for the settlement negotiations, including research into the complicated accounting rules at issue in the Action; and (4) consulting with a damages consultant.

22.     With the benefit of this extensive investigation and comprehensive analysis of the factual and legal issues in this Action, all Settling Parties entered settlement negotiations well-informed of the strengths and weaknesses of the claims and defenses asserted in this Action.

23.     On October 17, 2019, the parties engaged in an in-person mediation session before Jed Melnick, Esq., a highly experienced securities litigation mediator, for an arm's-length mediation session.  *See* Stipulation at 2.  The mediation was part of an effort to explore possibilities for settlement.  In advance of the mediation session, both sides submitted and exchanged mediation statements and exhibits.

24.     The parties came to an agreement in principle during the mediation session and then engaged in negotiations over the following months to finalize the terms of the Stipulation.

**B.      Reasons for the Settlement**

25.     Although Lead Plaintiff and Lead Counsel strongly believe that the claims asserted in this Action are meritorious and that the evidence developed to date supports them, they recognize and acknowledge the substantial expense and duration of continued proceedings that would be necessary to prosecute the Action.  Lead Plaintiff and Lead Counsel are also mindful of the inherent difficulty of proving claims under the federal securities laws and the possible defenses to the claims asserted in this Action, as well as the uncertainties presented by complex litigation.

26.     Lead Plaintiff acknowledges that, notwithstanding his ability to further develop factual support for his claims, there is a significant risk that the Court would rule in Defendants' favor on these issues at the motion to dismiss stage or at summary judgment.  Defendants have denied, and continue to deny, Lead Plaintiff's allegations, and would undoubtedly continue to vigorously oppose the Action and mount strong defenses were the Action to continue.  Even if Lead Plaintiff's claims were to survive summary judgment, there is also a risk that the jury might

be swayed by Defendants' theory of the case at trial, leaving the Class with very little recovery, or no recovery at all.

27.     Without the Settlement, Lead Plaintiff would have faced difficulty obtaining the necessary documents and depositions had the case proceeded to the formal discovery phase. Considering that the events alleged in the Action took place over the course of several years, beginning in 2014, the relevant documents may have been misplaced, former employees may be difficult to locate, and the memories of the parties involved in the actions alleged in the complaints may have faded.  In addition to these challenges, the process of obtaining the needed discovery from Defendants would have been time consuming and costly, and would have further delayed recovery for the Class.  The complexity of the allegations would have required the retention of additional experts and countless depositions, inconveniencing not only the Settling Parties, but third parties as well.  Specifically, in order to develop the claims in the Action, the fact discovery process would require, among other things: drafting discovery requests; engaging in protracted discovery motion practice; reviewing potentially hundreds of thousands of pages of documents; taking numerous depositions; serving and attempting to enforce third party subpoenas; and retaining accounting and financial expert witnesses.

28.     Even if Lead Plaintiff were able to obtain the necessary discovery, the road to trial would involve numerous motions, including summary judgment, and require the preparation of expert reports and debate over witnesses, all of which would be time consuming and would monopolize valuable court resources.

29.     Assuming that Lead Plaintiff filed a successful class certification motion and the claims in the Action were able to survive Defendants' motion for summary judgment, and the case proceeded to trial, Lead Plaintiff might not recover anything for the Class.  While Lead

9

Plaintiff is prepared to prove the complex factual and legal issues in this Action at trial, there is a substantial risk that the jury would not have agreed with his theory of the case. For example, it is well established that loss causation is a very complicated issues requiring testimony from financial experts. Often this essential element is reduced to a "battle of the experts." A jury's reaction to conflicting expert testimony is unpredictable and Lead Plaintiff recognized the possibility that a jury could have been swayed by Defendants' experts and awarded little to no damages. Even if Lead Plaintiff were to prevail at trial, Defendants might have appealed the decision. The appeals process can go on for months or even years, significantly prolonging the Action and jeopardizing any recovery awarded to the Class at trial should Defendants be victorious.

30. Notwithstanding the risks to recovery posed by a trial in this Action, the trial process is lengthy, complicated, and would be taxing on the Court and the attorneys involved.

31. As well, further litigation of the Action would be costly, and would have significantly depleted the insurance that is the source of funding for the Settlement. At the time of the settlement negotiations, the available insurance was being depleted by, *inter alia*, costs related to an ongoing SEC investigation of Revolution Lighting and six derivative actions that were filed. If the additional litigation were to deplete all of the insurance at a later stage of the proceedings after significant time and energy had been invested to reach a resolution, the Class might be left with only the Company and the Individual Defendants as sources of recovery. Additional recovery from the Company is unlikely. During the Action, the Company's delinquent SEC filings and decimated stock price led to it being delisted from the Nasdaq, effective October 14, 2019. *See* RVLT, Current Report (Form 8-K) (Oct. 10, 2019). As noted

in the Preliminary Approval Motion,[3] the Company noted in November 2019 that it "will likely need additional funding to continue its operations beyond the first quarter of 2020." *See* PA Motion at 14.  This need was echoed in a recent SEC filing, which explained that as of June 1, 2020, the Company estimated it had $1.6 million of available of liquidity, and "will likely need additional funding to continue its operations." *See* RVLT, Current Report (Form 8-K) (June 4, 2020).[4]  Although recovery from the Individual Defendants is possible, it would depend on establishing their individual roles in the alleged fraud, including their respective scienter.  As explained in the Preliminary Approval Motion, Lead Counsel believes this would be an uphill battle considering, *inter alia*, that the Company's Audit Committee purportedly concluded that defendant LaPenta did not have knowledge of the accounting issues that are part of the allegations in the Action.  *See* PA Motion at 14.

32.     In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Class.  Lead Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a favorable result for the Class.

**C.      The Settlement Terms**

33.     The Settlement, which the Court preliminarily approved, provides for the gross payment of $2,083,333.33 to secure a settlement of the claims asserted in the Action against Defendants.  If approved, the Settlement will finally resolve Lead Plaintiff's allegations against Defendants and release all Released Plaintiff's Claims against them in the Action.

---

[3]       "Preliminary Approval Motion" or "PA Motion" refers to Lead Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement, ECF No. 60.
[4]       This report can be found at:  https://www.sec.gov/Archives/edgar/data/917523/000119312520160711/d937524d8k.htm.

34.     Defendants have denied liability and any wrongdoing as part of the Settlement, and they vigorously maintain that they are not liable to the Class.

35.     All eligible Class Members who timely submit valid Proof of Claim and Release forms will receive a distribution from the Net Settlement Fund, which is the Settlement Fund minus administration expenses, Lead Counsel's fees and expenses, an award to Lead Plaintiff, and any Taxes and Tax Expenses.  The Court will be asked to approve the distribution of the Net Settlement Fund at a future date, once the administration is completed.

36.     The Settlement provides an immediate and substantial recovery to the Class, who faced a significant risk of a much smaller recovery or no recovery at all.  Given the complexities of the issues involved in the Action, Lead Plaintiff's entitlement to recovery would be correspondingly uncertain.  Moreover, there is still a considerable dispute between the Settling Parties over whether Defendants violated the securities laws at all.  This dispute could have resulted in further proceedings before the Court and would have required the expenditure of substantial additional judicial resources, time, and expenses.  Given these and other difficulties facing the Class at this point in the litigation, the Settlement provides a favorable guaranteed recovery.

37.     Based on this declaration and for the reasons set forth in the accompanying memoranda, Lead Plaintiff respectfully submits that the terms of the Settlement and the Plan of Allocation are fair, reasonable, and adequate.

## V.      THE COURT'S PRELIMINARY APPROVAL ORDER AND LEAD PLAINTIFF'S DISSEMINATION OF NOTICE

### A.      Preliminary Approval Order

38.     On March 20, 2020, Lead Plaintiff filed the Preliminary Approval Motion, seeking preliminary approval of the Settlement, preliminary certification of the Class, approval

of the manner and content of the proposed notice, and scheduling of the Final Approval Hearing. *See* ECF Nos. 60-62.

39.    On April 10, 2020, the Court issued the Preliminary Approval Order, which:

a)    Granted preliminary approval of the Stipulation and the Settlement set forth therein, subject to further consideration at the Final Approval Hearing;

b)    Scheduled a Final Approval Hearing for August 11, 2020 at 11 a.m. to determine whether (1) the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved; (2) the proposed Final Judgment as provided in the Stipulation should be entered; (3) the proposed Plan of Allocation for the proceeds of the Settlement is fair, reasonable, and adequate and should be approved; and (4) Lead Counsel's application for attorneys' fees, reimbursement of expenses, and an award for Lead Plaintiff should be granted;

c)    Authorized Lead Counsel to retain Epiq Class Action & Claims Solutions, Inc. ("Epiq") to supervise and administer the notice procedure as well as the processing of the claims;

d)    Approved the form, substance, and requirements of the Notice, Summary Notice, and Proof of Claim and Release form, and approved the plan for mailing, distribution, and/or publication of these documents;

e)    Directed Epiq to cause a copy of the Notice and Proof of Claim and Release form to be mailed by first class mail to the list of record holders of Revolution Lighting securities provided by the Company no later than May 11, 2020;

f)   Directed Epiq to cause copies of the Stipulation and its exhibits, the Preliminary Approval Order, the Notice, and the Proof of Claim and Release form, to be posted on the Settlement's website, www.RevolutionLighting Securities Litigation.com, no later than May 25, 2020;

g)   Directed Epiq to cause the Summary Notice to be posted by *PR Newswire* and published in *Investor's Business Daily* no later than May 25, 2020;

h)   Directed Lead Counsel to serve on Defendants' Counsel and file with the Court proof of such mailing and publication no later than August 4, 2020;

i)   Established procedures and deadlines for Class Member to object to the Settlement, Plan of Allocation, or award of attorneys' fees, expenses, or Lead Plaintiff's award, and to appear at the Final Approval Hearing; and

j)   Established procedures and deadlines for Class Members to submit Proof of Claim and Release forms or seek exclusion.

**B.     Notice**

40.     Pursuant to the Preliminary Approval Order, on July 7, 2020, Lead Counsel served on Defendants' Counsel and filed with the Court the Epiq Declaration, filed concurrently herewith.  The Epiq Declaration sets forth the efforts undertaken by Epiq to mail the Notice and Proof of Claim and Release form to Class Members, to publish the Summary Notice, and to establish the website www.RevolutionLightingSecuritiesLitigation.com and toll-free telephone line.

41.     As detailed in the Epiq Declaration, beginning on May 11, 2020, Epiq mailed or caused to be mailed a total of 24,738 Notices and Proof of Claim and Release forms to potential Class Members and nominees.  *See* Epiq Decl. ¶¶6, 10.  The Summary Notice was published in

*Investor's Business Daily* on May 25, 2020 and posted by *PR Newswire* on the same day. *See id.* ¶13.

43. Additionally, Epiq established a telephone helpline to accommodate potential Class Members who have questions about the Settlement. *See id.* ¶¶14-15.

43. Epiq also set up the website, www.RevolutionLightingSecuritiesLitigation.com, to provide information about the proposed Settlement to Class Members and others. *See id.* ¶16. The website makes available for viewing and downloading important documents, including the Notice, Proof of Claim and Release form, and the Stipulation. *See id.* The website also lists the exclusion, objection, and claim deadlines as well as the date and time of the Settlement Hearing.

44. As required by Rule 23 of the Federal Rules of Civil Procedure, due process, and the PSLRA, the Notice (a) described the nature of the claims asserted in the Action; (b) included the case caption; (c) included a definition of the Settlement Class; (d) summarized the Settling Parties' reasons for entering into the Settlement; (e) listed the name, telephone number, and address for Lead Counsel; (f) disclosed that Lead Counsel intends to seek attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of expenses not to exceed $75,000, and an award for Lead Plaintiff not to exceed $10,000; (g) provided the date, time, and location of the Settlement Hearing; (h) advised Settlement Class Members of their right to appear at the Settlement Hearing and instructed them that the date may change; (i) advised Class Members of their right to exclude themselves from the Class and the binding effect of doing so; (j) provided the deadline and procedure for opting out of or opposing the Settlement, Plan of Allocation, or award of attorneys' fees and expenses; (k) explained the consequences of remaining in the Settlement Class; (l) provided the manner in which to obtain more information, including the

address for the designated website; and (m) explained how to access the case docket at the courthouse or on PACER. *See* Epiq Decl., Ex. A at 1-9.

### C.    Reaction of the Class

45.    The Notice provides that objections to the Settlement, Plan of Allocation, and/or the application for attorneys' fees and payment of expenses and an award for Lead Plaintiff must be received by the Court no later than July 21, 2020. *See* Epiq Decl., Ex. A at 1-3, 7-8.

46.    Although 24,738 Notices have been mailed to potential Class Members and nominees (*see* Epiq Decl. ¶10), as of July 6, 2020, no Class Member has objected to the Settlement, the Plan of Allocation, the attorneys' fee award, the requested reimbursement of expenses, or the award for Lead Plaintiff. *Id.* at ¶19. As of July 6, 2020, Epiq has received one request for exclusion from the Settlement. *See id.* at ¶18. It is Lead Counsel's understanding that the exclusion request was submitted by a person who filed an opt-out action before the Settlement was reached, captioned *Graham v. Revolution Lighting Technologies, Inc., et al.*, Case No. 19-cv-8337 (S.D.N.Y.), and is not a Class Member in any event because his claims are explicitly excluded from this Settlement. *See* Stipulation ¶1.13.

47.    If any objections or additional requests for exclusion are received, they will be addressed in Lead Plaintiff's reply papers.

### D.    Plan of Allocation

48.    Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Class Members who wish to participate in the Settlement must submit a Proof of Claim and Release form to Epiq so that it is postmarked or submitted electronically no later than July 30, 2020. *See* Epiq Decl., Ex. A at 2, 5.

49.    As set forth in the Notice, all Class Members who timely file a valid Proof of Claim and Release form and whose *pro rata* share of the Net Settlement Fund amounts to $10.00

or more will receive a distribution of the Settlement proceeds, after deduction of, *inter alia*, attorneys' fees and expenses, an award to Lead Plaintiff, and taxes incurred on the Settlement Fund. *See, e.g.,* Epiq Decl., Ex. A at 13. The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice.

50. The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged misconduct as opposed to losses caused by market or industry factors not related to the alleged fraud.

51. Under the Plan of Allocation, the Claims Administrator will calculate each Authorized Claimant's Recognized Loss, as explained in the Notice. *See* Epiq Decl., Ex. A at 10-13. The calculation of a Recognized Loss will depend upon several factors, including when and for how much Class Members purchased or otherwise acquired their Revolution Lighting securities during the Class Period, and whether those securities were sold, and if sold, when and for how much they were sold. *See id.* In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have held through at least one of the corrective disclosures set forth in the Plan. *See id.* The Claims Administrator will use the Recognized Loss formula to determine each Authorized Claimant's *pro rata* share to proportionately allocate the Net Settlement Fund to the Authorized Claimants. *See id.*

52. The Plan of Allocation also provides that the total payments associated with call options are limited to 1% of the Net Settlement Fund, as call options account for less than 1% of the combined dollar trading volume of Revolution Lighting securities during the Class Period. *See* Epiq Decl., Ex. A at 13 & 13 n.3.

53.     The Plan of Allocation was formulated with the assistance of Lead Plaintiff's damages consultant, and it tracks the theory of damages alleged in the *Remer* Complaint.  It was also reviewed and approved by Epiq, a claims administrator with substantial experience in claims administration.

54.     The terms of the Plan of Allocation were fully disclosed in the Notice which was mailed to 24,738 potential Class Members and nominees and made available on the Action's designated website beginning on May 11, 2020.  *See* Epiq. Decl. ¶¶6, 10, 16.  To date, there have been no objections to the Plan of Allocation; and thus, Lead Plaintiff respectfully submits that it is fair, reasonable, and adequate and should be approved by the Court.

## VI.     LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### A.     Attorneys' Fees

55.     Lead Counsel has represented the Class on a wholly contingent basis for over a year, not receiving any payment for its service or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement.  Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Class has been expensive and challenging

56.     The Notice informed Class Members that Lead Counsel will apply for an award of attorneys' fees up to 33.33% of the Settlement Fund, reimbursement of expenses not to exceed $75,000, and an award for Lead Plaintiff not to exceed $10,000.  *See* Epiq Decl., Ex. A at 1.

57.     Lead Counsel requests that the Court award a fee of 33.33% of the Settlement Fund, or $694,375 plus accrued interest.

58.     As discussed in the Fee Motion, filed concurrently herewith, the requested fee is is fair, adequate, and reasonable in this Action.  In addition, in light of the factors including the favorable result achieved for the Class, the skill required, the quality of work performed, and the

risk of pursuing claims on a contingency basis, Lead Counsel respectfully submits that a fee of 33.33% of the Settlement Fund is justified and should be approved.

59.     According to Lead Plaintiff's damages consultant, if Class Members submit claims for 100% of the shares eligible for distribution, the average distribution per share of common stock will be approximately $0.24 before deduction of Court-approved fees and expenses.  Based on the Class's maximum losses arising from Defendants' alleged fraud, the damages per share of common stock would be approximately $4.18.  Thus, the $2,083,333.33 Settlement Amount will recover approximately 5.78% of the maximum potential damages available in this Action (assuming the proposed Class is certified and all claims and damages were proven), which is well above the median ratio of 2.6% for typical recoveries in securities class actions in 2018, as reported in the study compiled by NERA Economic Consulting, a true and correct copy of which is attached as *Exhibit B* hereto.  Based on Defendants' adamant denial of any liability, as well as the substantial time and expense of continued litigation, this Settlement Amount represents a favorable recovery for the Class.

60.     Lead Counsel's expertise and persistence have been vital to obtaining such a favorable result for the Class.  As set forth in its firm resume, attached as *Exhibit C* hereto, the Faruqi Firm is a nationally-recognized class action firm with extensive experience litigating and negotiating settlements as lead or co-lead counsel in complex securities class actions.

61.     In order to reach a successful resolution of this Action, Lead Counsel was required to litigate at a high skill level because Defendants were represented by Wilmer Cutler Pickering Hale & Dorr LLP, which fought vigorously for its clients throughout the Action and were formidable opponents.

62.    As set forth in the Faruqi Lodestar Report, a true and correct copy of which is attached hereto as **Exhibit D**, Lead Counsel has committed hundreds of hours to litigating this Action for more than one year, from the initial investigations to this final resolution. Specifically, from April 2019 through June 2020, Lead Counsel has devoted 990.25 hours to this Action, which includes time spent, *inter alia*: (1) conducting an extensive investigation into the facts alleged in the Action, including conferring with an investigator and reviewing and analyzing press releases, SEC filings, conference call transcripts, stock price movements, analyst reports, other complaints filed against the Company, and documents received from the Occupational Safety and Health Administration pursuant to a request made under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*; (2) conducting research for and briefing the contested lead plaintiff motion; (3) preparing a detailed amended complaint to be filed in the event that settlement negotiations failed; (4) conducting complex legal research in connection with drafting the detailed amended complaint and preparing for the settlement negotiations, including research into the complicated accounting rules at issue in the Action; (5) consulting with a damages consultant to better understand the issues facing recovery for the Class; (6) drafting a mediation statement; (7) communicating with Lead Plaintiff throughout the Action; (8) engaging in a mediation session and corresponding with the mediator and Defendants' Counsel after the session to reach a resolution of the claims; (9) drafting the Settlement Stipulation, Notice, and related materials; and (10) drafting the preliminary approval motion papers.

63.    Based upon the hours expended by Lead Counsel and the current billing rates for Lead Counsel's professionals, the total lodestar is $595,645.00. The lodestar results in a multiplier of 1.17 where the fee requested by Lead Counsel in the amount of $694,375 (plus accrued interest) is approximately 1.17 times Lead Counsel's lodestar of $595,645.00.

20

64.     Lead Counsel's time is taken from daily time records regularly prepared and maintained by the firm in the ordinary course of business.  The hours expended in preparing this application for fees and reimbursement of expenses have been excluded from Lead Counsel's total time.

65.     The total number of hours reasonably and necessarily spent by Lead Counsel in this Action is 990.25 hours.  Lead Counsel's hourly billing rates range from $595 to $950 for partners, $475 to $550 for associates, and $275 to $400 for paralegals.  The total lodestar amount for attorney and support staff time, based on the Faruqi Firm's current rates, is $595,645.  The hourly rates for attorneys and support staff in the Faruqi Firm, included in *Exhibit D*, are reasonable for the region and the expertise of the attorneys.

**B.     Costs and Expenses**

66.     The expenses incurred by Lead Counsel in the prosecution of this Action are set forth in the accompanying Expense Report from the Faruqi Firm, a true and correct copy of which is attached hereto as *Exhibit E*.  In total, Lead Counsel has incurred $49,640.94 in expenses.

67.     The expenses in the Expense Report are taken from the books and records of the Faruqi Firm maintained in the ordinary course of business.  The books and records are prepared from expense vouchers, check records, and other such documents.  The expenses were reasonable and necessary for the effective and efficient prosecution of this Action and are the type that would normally be charged to a fee-paying client in the private legal marketplace.

68.     The majority of this amount, $39,756.05, represents expenses primarily incurred by the private fact investigator and the damages consultant retained by Lead Counsel.

69.     Lead Counsel hired L.R. Hodges & Associates, Ltd. to conduct a background fact investigation and to reach out to potential confidential witnesses who may be able to provide more insight into what was happening at Revolution Lighting during the Class Period.

70.     Lead Counsel also retained an economic consulting firm, Stanford Consulting Group, Inc., to consult on the damages and loss causation issues present in this Action, and to assist with the preparation of the Plan of Allocation.

71.     Lead Counsel respectfully submits that fees paid to the fact investigator and the damages consultant were reasonable and necessary to prosecute this Action to the point at which it settled.

72.     The remainder of Lead Counsel's expenses, $9,884.89, reflect routine and typical expenditures incurred during the course of litigation, including mediation fees, filing fees, electronic research, photocopying, postage, and transportation.  All of these expenditures are the types of expenses incurred in similar class actions of this size and would be billed to a fee-paying client.

73.     The total expenses, $49,640.94 are only approximately 66% of the $75,000 in potential expenses that the Notice informed the Class may be incurred.  Lead Counsel respectfully submits that these expenses are reasonable in light of the pace and duration of the Action and were necessarily incurred for its successful resolution.  Lead Counsel understood that it might not recover any expenses in the event the Action was dismissed, and thus took steps to minimize costs wherever possible without jeopardizing its duty to zealously represent the Class.

### C.     Award for Lead Plaintiff

74.     Lead Counsel also respectfully requests that the Court grant an award in the amount of $10,000 to Lead Plaintiff, to reimburse Lead Plaintiff for his service as representative of the Class in this Action.

75.     As set forth in the Declaration of Fred Remer, attached hereto as *Exhibit F*, Lead Plaintiff has taken his role as representative of the Class very seriously.  Over more than a year, he conservatively estimates that he has dedicated at least 200 hours of his time to this Action by: (i) engaging in numerous communications with Lead Counsel; (ii) meeting with Lead Counsel; (iii) participating in the litigation and providing input into the prosecution of the case; (iv) reviewing documents filed in this Action; (v) reviewing Company press releases and SEC filings that were issued prior to and during the litigation to help find information relevant to the Action, and forwarding information he believed to be pertinent to Lead Counsel to aid the prosecution of the Action; and (vi) consulting with counsel and providing input on the mediation and settlement negotiations.  *See* Ex. F at ¶¶6-8, 10.

76.     Thus, Lead Plaintiff actively and effectively complied with the demands that arose during the litigation and settlement of this Action.  The types of activities that Lead Plaintiff has engaged in are precisely the type of efforts that courts have found support an award to class representatives.  Because Lead Plaintiff has played an integral role in this Action, Lead Counsel respectfully submits that he should be reimbursed for the time and effort he devoted to actively representing the Class in this Action.

## VII.    LIST OF EXHIBITS

77.     Attached hereto Attached hereto as *Exhibit A* is a true and correct copy of the Court's Preliminary Approval Order dated April 10, 2020.

78.     Attached hereto as *Exhibit B* is a true and correct copy of the NERA Economic Consulting report by Stefan Boettrich and Svetlana Starykh titled *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review.*

79.     Attached hereto as *Exhibit C* is a true and correct copy of the Faruqi Firm's resume.

80.     Attached hereto as *Exhibit D* is a true and correct copy of the Faruqi Firm's Lodestar Report.

81.     Attached hereto as *Exhibit E* is a true and correct copy of the Faruqi Firm's Expense Report.

82.     Attached hereto as *Exhibit F* is a true and correct copy of the Declaration of Fred Remer.

## VIII.  CONCLUSION

83.     Lead Counsel respectfully submits that the Settlement should be granted as fair, reasonable, and adequate; that the Plan of Allocation should be approved as fair, reasonable, and adequate; that attorneys' fees in the amount of 33.33% of the Settlement Fund, or $694,375 plus accrued interest, should be approved as fair and reasonable; that the expenses in the amount of $49,640.94 should be reimbursed in full; and that Lead Plaintiff should be granted an award in the amount of $10,000 for the time and effort he put forth participating in the Action.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.


Dated: July 7, 2020

/s/ Richard W. Gonnello
Richard W. Gonnello

24