**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: REVOLUTION LIGHTING TECHNOLOGIES, INC. SECURITIES LITIGATION | No. 1:19-cv-00980-JPO |

**LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**(1) AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND**
**(2) AN AWARD FOR LEAD PLAINTIFF**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND..................................................... 3

ARGUMENT .................................................................................................................. 3

I.  LEAD COUNSEL'S ATTORNEYS' FEE REQUEST IS FAIR AND REASONABLE.. 3

    A.  Lead Counsel Seeks An Award Of Attorneys' Fees From the Common Fund ......... 3

    B.  The Percentage-Of-The-Fund Method Of Determining Fees Is Appropriate And Preferable ................................................................................................................... 4

    C.  Attorneys' Fees Of 33.33% Of The Settlement Fund Are Fair, Reasonable, And Comparable To Fees Awarded In This District In Similar Cases........................... 5

    D.  The *Goldberger* Factors Strongly Support The Requested Fees .............................. 5

        1.  The Time and Labor Expended by Lead Counsel .................................... 6

        2.  The Magnitude and Complexity of the Litigation .................................... 7

        3.  The Risks of the Litigation ........................................................................ 8

        4.  The Quality of Representation ................................................................... 9

        5.  The Requested Fees in Relation to the Settlement................................... 10

        6.  Public Policy Considerations .................................................................... 11

    E.  The Settlement Class' Reaction to the Fees Request............................................... 12

    F.  The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar Cross-Check ..................................................................................................................... 13

II.  LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED IN CONNECTION WITH THIS ACTION .......................................................................... 15

III.  LEAD PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES.............................................................................................. 16

CONCLUSION.............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Adair v. Bristol Tech. Sys., Inc.*,
  No. 97 Civ. 5874 RWS, 1999 WL 1037878 (S.D.N.Y. Nov. 16, 1999)...................................11

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................................................15

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) .......................................................................................................3

*In re Am. Int'l Group, Inc. Sec. Litig.*,
  No. 04 Civ. 8141(DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010)...................................17

*In re Am. Int'l Group, Inc. Sec. Litig.*,
  No. 04 Civ. 8141 (DAB), 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ..............................11, 12

*Aponte v. Comprehensive Health Mgmt., Inc.*,
  No. 10 Civ. 4825 (JLC), 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)......................................7

*In re Beacon Assocs. Litig.*,
  No. 09 Civ. 777 CM, 2013 WL 2450960 (S.D.N.Y. May 9, 2013)................................4, 5, 13

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................................7, 17

*In re Blech Sec. Litig.*,
  No. 94 Civ. 7696 (RWS), 2000 WL 661680 (S.D.N.Y. May 19, 2000) .................................11

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)......................................................................................................................3

*Catagna v. Madison Square Garden, L.P.*,
  No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011)............................10

*In re China MediaExpress Holdings, Inc.*,
  No. 11-CV-0804 (VM), 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ................................11

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 1:15-md-02631 (CM) (SDA),
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)........................................................9, 13, 14, 15

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......................................4

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...............9, 11, 13

*Fogarozzo v. Lehman Bros.*,
  No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ....................................7

*In re Giant Interactive Group, Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................................8

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................8, 15, 16

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)........................................................................................ *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................5, 13, 14

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)......................4, 11, 12

*In re iDreamsky Tech. Ltd. Sec. Litig.*,
  No. 1:15-cv-2514(JPO), 2018 WL 8950640 (S.D.N.Y. Apr. 6, 2018) (Oetken, J.) ................10

*In re IMAX Sec. Litig.*,
  No. 06 Civ. 6128 (NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) ..............................4, 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)....................................................................................15

*Maley v. Del. Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................................4, 10, 12, 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..................................10

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................................4, 7

*In re Oracle Corp. Sec. Litig.*,
  No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) .........................................8

*Ramsey v. MRV Commc'ns Inc.*,
  No. CV 08-04561 GAF, 2010 WL 11596641 (C.D. Cal. Nov. 16, 2010)...............................17

*Raniere v. Citigroup Inc.*,
  310 F.R.D. 211 (S.D.N.Y. 2015) ........................................................................................14

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
  No. 94 Civ. 5587(PKL)(RL), 2003 WL 21136726 (S.D.N.Y. May 15, 2003).......................11

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................4, 5, 8, 13

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989)...................................................................................12

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................13

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods.*
*Liability Litig.*,
MDL No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)..........................14

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)...............................................................................11

**Statutes**

15 U.S.C. § 78u-4(a)(4) ................................................................................................16, 17

15 U.S.C. § 78u-4(a)(6) .......................................................................................................4

**Other Authorities**

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. (1995) ...............................................17

Lead Counsel, Faruqi & Faruqi, LLP, respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees and expenses and an award to Lead Plaintiff Fred Remer pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with his representation of the Class.[1]

## INTRODUCTION

As discussed in Lead Plaintiff's Motion for Final Approval of the Class Action Settlement ("Final Approval Motion") filed concurrently herewith, Lead Plaintiff, on behalf of himself and the Class, has reached a proposed Settlement of this putative class action lawsuit (the "Action" or the "Litigation") pursuant to which defendants Revolution Lighting Technologies, Inc. ("Revolution Lighting" or the "Company"), Robert V. LaPenta, Charles J. Schafer, and James A. DePalma (collectively, "Defendants") have agreed to cause to be paid a total of $2,083,333.33 in cash that, if finally approved, will result in the dismissal of all claims asserted in this Action and the release all Released Claims against the Released Defendant Parties. The Settlement is the result of zealous prosecution of Lead Counsel throughout this Litigation and is a favorable result for the Class considering the significant risks that a smaller recovery—or ***no recovery***—might be achieved after a lengthy trial and likely appeals.

---

[1]    Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated March 18, 2020 ("Stipulation"), ECF No. 58; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; (e) all references to the "Gonnello Declaration" or "Gonnello Decl." are to the Declaration of Richard W. Gonnello filed herewith; (f) all references to the "Epiq Declaration" or "Epiq Decl." are to the Declaration of Michael McGuinness Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion; and (g) all page references are to a document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.

In connection with the Settlement, Lead Counsel respectfully seeks approval of an award of attorneys' fees in the amount of 33.33% of the Settlement Fund, or $694,375 plus accrued interest,[2] and reimbursement of $49,640.94 in expenses reasonably incurred during the course of the Action.  In addition, Lead Plaintiff seeks an award in the amount of $10,000 for his reasonable costs and expenses directly related to his representation of the Class in this Action, pursuant to 15 U.S.C § 78u-4(a)(4).

The requested fee is fair and reasonable in light of the significant obstacles Lead Counsel has faced during prosecution of this Action, Lead Counsel's skill and expertise in litigating securities class actions, and the favorable result obtained for the Class.  In recognition of the risks undertaken and the effort expended by counsel in contingency fee cases, courts in this Circuit and throughout the United States routinely award fees of this size in complex securities cases with comparable recoveries.  The fairness of the requested fees also becomes evident when it is compared to Lead Counsel's lodestar of $595,645.  *See* Gonnello Decl. ¶63.  With a "lodestar multiplier" of approximately 1.17, it is clear that Lead Counsel's fee request is reasonable as greater multipliers are often approved.  This litigation was prosecuted under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* ("PSLRA"), which was intended to make litigation of securities class action lawsuits significantly more challenging and burdensome on investors.  In recognizing the significant difficulty investors face under the PSLRA, retired Supreme Court Justice Sandra Day O'Connor recognized: "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the

---

[2]     The Settlement Fund is defined as "the Settlement Amount [$2,083,333.33] plus all interest and accretions thereto . . . ."  Stipulation ¶1.34.

years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Furthermore, the Class's reaction to the request for fees, litigation expenses, and an award for Lead Plaintiff has been positive. The deadline set by the Court for objections to the Settlement and requests for exclusion is July 21, 2020. Since notice was distributed to potential Class Members and nominees beginning on May 11, 2020, which informed potential Class Members that Lead Counsel would seek fees of up to 33.33% of the Settlement Fund plus expenses up to $75,000, and that Lead Plaintiff would seek an award of up to $10,000, not a single Class Member has filed an objection. *See* Gonnello Decl. ¶¶44-46.

As detailed below, the requested fees are fair and reasonable under the applicable standards in this Circuit. Accordingly, Lead Counsel respectfully submits that the requested attorneys' fees, reimbursement of expenses, and award for Lead Plaintiff should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

To avoid undue repetition, Lead Counsel respectfully refers the Court to the Gonnello Declaration for a detailed description of Lead Plaintiff's claims and the prosecution of this Action.

## ARGUMENT

### I. LEAD COUNSEL'S ATTORNEYS' FEE REQUEST IS FAIR AND REASONABLE

#### A. Lead Counsel Seeks An Award Of Attorneys' Fees From the Common Fund

Attorneys who recover a common fund for class members are entitled to receive reasonable attorneys' fees from that fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered

3

and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014); *see also Goldberger*, 209 F.3d at 47.  In addition to providing just compensation, an award of fair and reasonable attorneys' fees from a common fund serves to encourage skilled counsel to represent those who seek redress for injuries inflicted on a class and to discourage similar misconduct in the future.  *See Maley v. Del. Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

> **B.      The Percentage-Of-The-Fund Method Of Determining Fees Is Appropriate And Preferable**

The two methods used in the Second Circuit for calculating reasonable fees in class actions are the percentage-of-the-fund method ("percentage method") and the lodestar method. *See Goldberger*, 209 F.3d at 47.  The Second Circuit favors the percentage method in common fund cases.  *See id.* at 48-49; *see also In re Merrill Lynch & Co. Research Reports Sec. Litig.* ("*Merrill Lynch Research*"), 246 F.R.D. 156, 171 (S.D.N.Y. 2007) ("The trend in the Second Circuit . . . has been to express attorneys' fees as a percentage of the total settlement . . . ").

District courts in this Circuit frequently use the percentage method to calculate lead counsel's awards in common fund cases and reserve the lodestar calculation to test the proposed award's fairness.  *See, e.g., In re Beacon Assocs. Litig.*, No. 09 Civ. 777 CM, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005).  Moreover, the percentage method is consistent with the PSLRA's provision that attorneys' fees in securities class actions should represent a "reasonable percentage" of the amount recovered for the class.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008); 15 U.S.C. § 78u-4(a)(6).

The foregoing authority suggests that the Court should use the percentage method to calculate reasonable attorneys' fees in this Action.

**C.    Attorneys' Fees Of 33.33% Of The Settlement Fund Are Fair, Reasonable, And Comparable To Fees Awarded In This District In Similar Cases**

The amount of attorneys' fees requested, 33.33% of the Settlement Fund, falls within the range of attorneys' fees often awarded by courts within the Second Circuit.  *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014) (finding that 33⅓% attorneys' fee award was fair and reasonable and collecting cases awarding this amount); *Beacon*, 2013 WL 2450960, at *5 ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund."); *Telik*, 576 F. Supp. 2d at 587 n.8 (finding that the requested 25% fee was "less than the attorneys' fees awards made by courts in this District and other courts within the Second Circuit," and collecting Second Circuit securities class action cases which granted attorneys' fees of 30-33.33%).   Accordingly, substantial authority within this Circuit supports the attorney's fees requested in this complex securities Action.

**D.    The *Goldberger* Factors Strongly Support The Requested Fees**

In *Goldberger*, the Second Circuit set forth the factors that district courts should use to evaluate the reasonableness of the requested attorneys' fees.  *Goldberger*, 209 F.3d at 50.  The factors include the following: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risks of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Id.*  As discussed below, these factors as applied to this Action demonstrate that Lead Counsel's requested fee is fair and reasonable.

### 1.    The Time and Labor Expended by Lead Counsel

The requested fee is supported by the substantial time and diligent effort expended by Lead Counsel to achieve the Settlement in this Action.  *See generally* Gonnello Decl. ¶¶55-65. As set forth in more detail in the Gonnello Declaration, Lead Counsel conducted a thorough investigation into Defendants' alleged fraud and committed extensive resources to developing the challenging, technical aspects of Lead Plaintiff's claims and overcoming the obstacles impeding the Class Members' recovery over a year of litigation.  Over the course of 990.25 hours resulting in a lodestar of $595,645, Lead Counsel, *inter alia*:

- Conducted a lengthy investigation into the facts alleged in the Action, including retaining an investigator to conduct an investigation, as well as reviewing and analyzing press releases, SEC filings, conference call transcripts, stock price movements, analyst reports, other complaints filed against the Company, and documents received pursuant to a Freedom of Information Act request to the Occupational Safety and Health Administration;

- Conducted research for and briefed the contested lead plaintiff motion;

- Consulted with a damages consultant to determine the damages suffered by the Class and to better understand the issues facing recovery for the Class;

- Prepared a detailed amended complaint to be filed in the event that the settlement negotiations failed;

- Conducted complex legal research in connection with drafting an amended complaint and preparing for settlement negotiations;

- Participated in in-person settlement negotiations with opposing counsel and Jed D. Melnick, Esq., a well-respected and highly experienced mediator, and engaged in

negotiations over the following months with opposing counsel to finalize the terms of the

Stipulation;

- Drafted the Settlement Stipulation; and

- Prepared motions and briefs in support of preliminary approval of the settlement.

*See, e.g.*, Gonnello Decl. ¶¶21-24, 62.

Lead Counsel will devote additional hours and resources to assisting potential Class

Members with the completion and submission of their Proof of Claim and Release forms,

monitoring the claims process, corresponding with the Claims Administrator, and responding to

Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825

(JLC), 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013). The significant amount of time and

effort that Lead Counsel devoted to this case to obtain a $2,083,333.33 recovery, work that will

continue even if the Settlement is approved, confirms the reasonableness of the 33.33% fee

request.

## 2.       The Magnitude and Complexity of the Litigation

Securities class actions are notoriously complex and difficult to prosecute. *See, e.g., In re*

*Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012);

*Fogarozzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb.

23, 2011); *Merrill Lynch Research*, 246 F.R.D. at 172. This litigation proved no exception,

presenting substantial challenges from its inception.

As discussed in greater detail below and in the Gonnello Declaration, this Action also

involved complex accounting issues that made litigation particularly difficult. Settlement

negotiations required considerable investigation and legal analysis, in addition to numerous

7

discussions among Lead Counsel and Defendants' counsel.  The magnitude and complexity of this Action support the award of Lead Counsel's requested fees.

### 3.   The Risks of the Litigation

Courts in this Circuit consider the risks of the litigation critical to determining the reasonableness of the requested fees.  *See Telik*, 576 F. Supp. 2d at 592 (describing the risks of the litigation as "pivotal" to assessing the appropriateness of the requested fee award); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).  Among the types of litigation risks considered, "[t]he most salient is the attorneys' risk in accepting a case on a contingency fee. . . . "  *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011).

Lead Counsel prosecuted this Action on a contingent fee basis and did not receive any compensation for its services or reimbursement for litigation expenses for over a year.  Gonnello Decl. ¶55.  As described below and in the Gonnello Declaration, there were significant risks that Lead Counsel might not obtain any recovery for the Class and would not be compensated for its efforts.  *See id.* ¶¶55, 58.  Indeed, losses in contingent-fee cases, particularly those brought under the PSLRA, are exceedingly expensive.  There are numerous instances in which plaintiff's counsel expended a significant amount of money on litigation expenses and thousands of hours in contingency fee cases without receiving any recovery.  *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment for defendants after eight years of litigation).

Lead Plaintiff and Lead Counsel continue to believe that the claims asserted in the Action are meritorious and that the evidence developed to date supports those claims.  However, without the Settlement, the Litigation would have continued, posing significant risks and additional costs. For example, to prevail on his claims, Lead Plaintiff would have to prove that the alleged

8

misstatements and omissions regarding the company's revenue, revenue recognition policies, the effectiveness of the Company's internal controls, and the Company's business prospects, were made with scienter. *See Remer* Complaint at ¶¶1-14, 28-59. Scienter "is often the most difficult and controversial aspect of a securities fraud claim," and this case is no exception. *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019). For example, since the Action was filed, the Company's Audit Committee has purportedly concluded that defendant LaPenta (the CEO) did not have knowledge of the improper revenue recognition practices that occurred. *See* PA Motion at 2-3, 14; Gonnello Decl. ¶31. Defendants would no doubt raise numerous challenges to this element at the motion to dismiss and summary judgment stages. Thus, whether Lead Plaintiff would ultimately be able to prove liability under the Exchange Act was far from assured.

As a result, there was a significant risk that the Class would recover nothing at all, and that Lead Counsel would receive no reimbursement of expenses or fees for its work. Thus, Lead Counsel's assumption of the contingency fee risk in light of the risks posed by this complex securities class action strongly weighs in favor of the requested award. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *see also Christine Asia*, 2019 WL 5257534, at *18 (contingency fee risk supported the requested award).

### 4.    The Quality of Representation

The quality of the representation that Lead Counsel provided supports the reasonableness of the requested fee. Lead Counsel is a national law firm with extensive experience representing investors in large, complex securities class actions. *See* Gonnello Decl. ¶60, Ex. C. The

9

favorable outcome in this case is attributable to Lead Counsel's experience, hard work, diligence, and determination.

Lead Counsel's efficient prosecution of the Class's claims also speaks to the quality of representation, especially given the fact that Revolution Lighting has been delisted from the Nasdaq stock exchange. *See Maley*, 186 F. Supp. 2d at 373 ("A prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice."). Here, Lead Counsel achieved a favorable settlement for the Class early in the litigation, saving hundreds if not thousands of hours of legal time that may have increased its fees and expenses. *See Catagna v. Madison Square Garden, L.P.*, No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011). Additionally, by settling early with Defendants whose available insurance policy was being depleted due to the pending derivative actions and SEC investigation, Lead Counsel helped maximize the Class' recovery by averting further litigation expenses which would have even further eroded that policy. *See* Gonnello Decl. ¶31. Lead Counsel's early settlement of a complex securities class action also has "far reaching benefits in the judicial system." *Maley*, 186 F. Supp. 2d at 373.

### 5.    The Requested Fees in Relation to the Settlement

To determine whether the requested fee is reasonable in relation to the settlement, Courts in this District compare the requested fee to those "awarded in similar securities class-action settlements of comparable value." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009). The 33.33% fee requested here is on par with the range of fees awarded in comparable cases within the Second Circuit. *See, e.g., In re iDreamsky Tech. Ltd. Sec. Litig.*, No. 1:15-cv-2514(JPO), 2018 WL 8950640, at *4 (S.D.N.Y. Apr. 6, 2018) (Oetken, J.) (awarding attorney's fees of 33.3% on a $4.15 million

10

settlement);[3] *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587(PKL)(RL), 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (awarding 33⅓% of $975,000 settlement, plus expenses); *In re Blech Sec. Litig.,* No. 94 Civ. 7696 (RWS), 2000 WL 661680, at *6 (S.D.N.Y. May 19, 2000) (awarding 30% of $800,000 settlement); *Adair v. Bristol Tech. Sys., Inc.,* No. 97 Civ. 5874 RWS, 1999 WL 1037878, at *3 (S.D.N.Y. Nov. 16, 1999) (awarding 33% of $975,000 settlement, plus expenses, and finding that "[c]ourts in this District have previously awarded fees at or exceeding this level on numerous occasions"); *cf. In re China MediaExpress Holdings, Inc.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *2 (S.D.N.Y. Sept. 18, 2015) (awarding fees of 33.33% of $12 million recovery, plus expenses); *Hicks*, 2005 WL 2757792, at *9 (awarding fees of 30% on a $10 million settlement, and noting that such a fee award produced no windfall from a settlement that size).

Accordingly, this factor further supports Lead Counsel's requested fee award.

### 6.        Public Policy Considerations

Courts in this District have held that "[p]ublic policy concerns favor the award of reasonable attorneys' fees in class action securities litigation." *FLAG Telecom*, 2010 WL 457550, at *29. "[T]o attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005).

Moreover, attorneys' fees must be sufficient "to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." *In re Am. Int'l Group, Inc. Sec.*

---

[3]        The memorandum of law filed in *iDreamsky* in support of the fee award makes clear that the amount of attorneys' fees awarded, $1,383,333.33, represented one-third of the $4.15 million settlement amount. *See In re iDreamsky Tech. Ltd. Sec. Litig.*, No. 1:15-cv-02514(JPO), ECF No. 105 at 1 (Feb. 27, 2018).

*Litig.*, No. 04 Civ. 8141 (DAB), 2012 WL 345509, at *5 (S.D.N.Y. Feb. 2, 2012). As one court explained:

> Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices. . . . To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a private attorney general is vital to the continued enforcement and effectiveness of the Securities Acts.

*Hicks,* 2005 WL 2757792, at *9.

As a practical matter, securities class action lawsuits, such as this one, can only be maintained if counsel can receive reasonable compensation for its successful representation of plaintiffs injured by violations of the federal securities laws. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) ("A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken."). Lead Counsel was willing to assume the considerable risks of this litigation and achieved a successful result for the Class through its efforts. Accordingly, public policy supports an award of the reasonable attorneys' fees and expenses requested herein.

### E.     The Settlement Class' Reaction to the Fees Request

Although not included among the *Goldberger* factors, the Settlement Class's reaction to the requested attorneys' fees "is entitled to great weight by the Court." *Maley*, 186 F. Supp. 2d at 374. Pursuant to this Court's Preliminary Approval Order, 24,738 copies of the Notice and Proof of Claim and Release form were sent to potential Class Members beginning on May 11, 2020. Epiq Decl. ¶¶6, 10. That same day, these documents were made available on the Settlement's website, www.RevolutionLightingSecuritiesLitigation.com. *Id.* ¶16. Summary Notice was published in *Investor's Business Daily* and posted over *PR Newswire* on May 25,

12

2020. *Id.* ¶13. The Notice and Summary Notice (the "Notices") included all of the information required by Federal Rule of Civil Procedure 23, due process, and the PSLRA, informing the Class that Lead Counsel would apply for an award of up to 33.33% of the Settlement Fund plus expenses not to exceed $75,000. *See* Epiq Decl., Ex. A at 1-9. The deadline for objection to the fees request is July 21, 2020, as published in the Notices. *Id.* To date, no Settlement Class Member has objected to the amount of attorneys' fees requested. *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) (finding lack of any objections "suggests that the fee request is fair and reasonable").

**F.      The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar Cross-Check**

This Circuit encourages a lodestar cross-check on a requested fee award to evaluate its reasonableness. *See Goldberger*, 209 F.3d at 50; *see Beacon*, 2013 WL 2450960, at *5. To determine the lodestar, the court multiplies the number of hours an attorney devoted to the litigation by that attorney's hourly rate. Then, by applying a multiplier, the court adjusts the lodestar amount to reflect factors including the risks of litigation, the result obtained, and the quality of representations. *See, e.g., Hi-Crush*, 2014 WL 7323417, at *18; *FLAG Telecom*, 2010 WL 4537550, at *25-26.

Lead Counsel spent a total of 990.25 hours litigating this Action, resulting in a lodestar of $595,645. Gonnello Decl. ¶65. The Faruqi Firm's hourly billing rates range from $595-950 for partners, $475-550 for associates, and $275-400 for paralegals. Gonnello Decl. ¶65. To determine "the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have continually held that the standard is the rate charged in the community where the services were performed for the type of service performed by counsel," *i.e.*, the "market rate." *Telik*, 576 F. Supp. 2d at 589. Courts have found comparable rates charged by plaintiffs' counsel to be

13

reasonable. *See Christine Asia*, 2019 WL 5257534, at *20 (citing *In re Credit Default Swaps Antitrust Litig.*, No. 13 md 2476 (DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016), which approved fees based on a lodestar generated from 2016 partner rates of $834-$1,125 and associate rates of $411-$714)); *Hi-Crush*, 2014 WL 7323417, at *14 ("The rates billed by Lead Counsel (ranging from $425 to $825 per hour) for attorneys, are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude"); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (finding typical hourly rates of $650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals to be appropriate); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding lodestar cross-check supported the reasonableness of the requested fee award where "[t]he blended average hourly billing rate is $529 per hour for all work performed and projected, with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals[]"). Accordingly, the market rate supports the reasonableness of the hourly rate used by Lead Counsel in the calculation of its lodestar.

The hours worked by Lead Counsel are also reasonable. While the Settlement was achieved early in the litigation, Lead Counsel performed a great deal of work on behalf of the Class during the year leading up to the Settlement. *See* Section I.D.1, *supra*; Gonnello Decl. ¶¶21-22, 62. Lead Counsel respectfully submits that the 990.25 hours worked in connection with this Action were necessary to achieve this favorable Settlement for the benefit of the Class and are therefore reasonable. *See* Gonnello Decl. ¶¶63-65.

The requested attorneys' fees, 33.33% of the Settlement Fund, or $694,375 plus accrued interest, represents a multiplier of approximately 1.17 of Lead Counsel's lodestar. *See* Gonnello

14

Decl. ¶63.  This multiplier is less than those typically awarded in similar securities class actions in this District and confirms the reasonableness of the requested fees.  *See Christine Asia*, 2019 WL 5257534, at \*19 (approving requested fees with a 2.15 multiplier); *Global Crossing*, 225 F.R.D. at 468 (approving requested attorneys' fees with a 2.16 multiplier, which "falls comfortably within the range of lodestar multipliers . . . used for cross-check purposes in common fund cases in the Southern District of New York"); *Maley*, 186 F. Supp. 2d at 368 ("[A] multiplier of 4.65 [is] well within the range awarded by courts in this Circuit and courts throughout the country.").

## II.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED IN CONNECTION WITH THIS ACTION

Pursuant to the Notices, Lead Counsel also respectfully requests reimbursement of $49,640.94 reasonably incurred in connection with prosecuting this Action.  *See* Gonnello Decl. ¶¶66-73.  It is well-established that "[c]ounsel is entitled to reimbursement from the common fund for reasonable litigation expenses."  *In re IMAX*, 2012 WL 3133476, at \*6.  Courts in this Circuit frequently grant reasonable reimbursement requests from plaintiffs' counsel in common fund cases.  *See, e.g., In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (granting lead counsel's request for reimbursement of "out-of-pocket expenses reasonably and necessarily incurred" in prosecuting the action); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.").  Lead Counsel has itemized the categories of expenses it incurred and attests to its accuracy in the Gonnello Declaration.  Gonnello Decl. ¶¶66-73.  Lead Counsel's expenses include fees paid to a damages consultant and a private investigator, mediation fees, filing fees, electronic research,

photocopying, postage, and transportation. Gonnello Decl. ¶¶66-73, Ex. E. These expenses are those for which "the paying, arms' length market" routinely reimburses attorneys. *Global Crossing*, 225 F.R.D. at 468 (granting the requested reimbursement and categorizing the expenses—witnesses, filing fees, services of process, travel, legal research, document review— as those for which attorneys are often reimbursed). Furthermore, the requested reimbursement is substantially less than the $75,000 in potential expenses that the Notices informed the Class about. *See* Epiq Decl., Ex. A at 1.

Moreover, no objections to the expense request have been submitted. Epiq Decl. ¶19. As such, the requested reimbursement should be awarded from the Settlement Fund.

## III. LEAD PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES

Finally, Lead Counsel seeks an award in the amount of $10,000 for the Lead Plaintiff's costs and expenses pursuant to the PSLRA, 15 U.S.C § 78u-4(a)(4). The Notice disseminated to the Class stated that Lead Plaintiff may seek reimbursement of up to $10,000 from the Settlement Fund as compensation for the time and expense he incurred. Epiq Decl., Ex. A at 1. There have been no objections to the proposed award to Lead Plaintiff.

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class[,]" but explicitly provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Congress acknowledged "that lead plaintiffs *should* be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the

16

courts discretion to award fees accordingly." H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. (1995).

Many courts have construed 15 U.S.C. § 78u-4(a)(4) to include as compensable "costs" or "expenses" the amount of time spent on litigation that would otherwise have been spent on other things, such as the lead plaintiff's work, investment activities, or personal life. *See, e.g., In re Am. Int'l Group, Inc. Sec. Litig.*, No. 04 Civ. 8141(DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (awarding lead plaintiffs $30,000 pursuant to 15 U.S.C. § 78u-4(a)(4) "to compensate them for the time and effort they devoted on behalf of a class"); *Bear Stearns,* 909 F. Supp. 2d at 273 (awarding $31,053.14 to institutional lead plaintiff); *Ramsey v. MRV Commc'ns Inc.*, No. CV 08-04561 GAF, 2010 WL 11596641, at *8-9 (C.D. Cal. Nov. 16, 2010) (applying 15 U.S.C. § 78u-4(a)(4) and awarding the lead plaintiff $11,000 to reimburse him for 35.75 of the hours he spent working on the case at the hourly rate of $300 an hour, which the court found appropriate for a lead plaintiff who works in the financial industry or runs a business, and collecting cases).

Lead Plaintiff's request here is justified for similar reasons. As set forth in Fred Remer's declaration accompanying this motion, Lead Plaintiff conservatively estimates that he spent 200 hours of his time in work directly related to the representation of the Class. Gonnello Decl., Ex. F. at ¶10. Lead Plaintiff's work on behalf of the Class included: engaging in numerous communications with Lead Counsel about the Action through all stages of the litigation; collecting information concerning his Revolution Lighting transactions; reviewing documents filed in the Action; and providing input on the mediation and settlement negotiations. Gonnello Decl., Ex. F. at ¶6. Lead Plaintiff was particularly devoted to maximizing the recovery for himself and the Class because he lost a substantial portion of his retirement savings on his

Revolution Lighting investments. *Id.* at ¶7. Wanting to make sure that no stone was left unturned, Lead Plaintiff also spent a significant amount of time reviewing Company press releases and SEC filings that were issued prior to and during the litigation to help find information relevant to the Action. *See id.* Upon finding information that he believed was pertinent, Lead Plaintiff would forward it to Lead Counsel to aid the prosecution of the case. *Id.* at ¶7. The time Lead Plaintiff devoted to this litigation represents a cost to him, as it is time that he could not devote to other endeavors or his personal life. *See id.* at ¶¶2, 10.

Accordingly, Lead Counsel, on behalf of Lead Plaintiff, respectfully requests that the Court reimburse Lead Plaintiff for his reasonable costs and expenses, amounting to $10,000 incurred in fulfilling his duty to ably represent the interests of the Class and achieve the substantial result reflected in the Settlement.

## CONCLUSION

For the reasons stated above, Lead Counsel respectfully requests that the Court award attorneys' fees of 33.33% of the Settlement Fund, reimbursement of litigation expenses in the amount of $49,640.94, and an award to Lead Plaintiff in the amount of $10,000.

Dated: July 7, 2020

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Richard W. Gonnello*
     Richard W. Gonnello

Richard W. Gonnello
Katherine M. Lenahan
Sherief Morsy
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 983-9331
E-mail: rgonnello@faruqilaw.com
     klenahan@faruqilaw.com
     smorsy@faruqilaw.com

*Attorneys for [Proposed] Class Representative Fred Remer and [Proposed] Class Counsel for the Class*

19