**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: REVOLUTION LIGHTING TECHNOLOGIES, INC. SECURITIES LITIGATION | No. 1:19-cv-00980-JPO |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISTRIBUTION OF THE NET SETTLEMENT FUND**

**TABLE OF CONTENTS**

PROCEDURAL BACKGROUND.............................................................................................. 2

ARGUMENT .......................................................................................................................... 3

I.      THE CLAIMS ADMINISTRATOR'S ADMINISTRATIVE DETERMINATIONS
        SHOULD BE APPROVED ........................................................................................... 3

        A.      Overview Of The Claims Administration Process....................................... 4

        B.      Ineligible Claims Should Be Rejected ........................................................ 5

        C.      Late Claims That Are Otherwise Valid Should Be Accepted................................. 5

        D.      Claims Received After July 14, 2021 Should Be Rejected As Untimely .................. 6

II.     THE DISTRIBUTION OF THE NET SETTLEMENT FUND TO AUTHORIZED
        CLAIMANTS SHOULD BE APPROVED...................................................................... 7

III.    PAYMENT OF EPIQ'S OUTSTANDING FEES AND EXPENSES FROM THE
        SETTLEMENT FUND SHOULD BE AUTHORIZED..................................................... 8

IV.     RETENTION OF PROOF OF CLAIM FORMS AND OTHER DOCUMENTS.............. 9

V.      RELEASE OF CLAIMS................................................................................................ 9

CONCLUSION....................................................................................................................... 9

Lead Plaintiff Fred Remer ("Lead Plaintiff"), on behalf of himself and the Class, respectfully submits this memorandum of law in support of his motion for distribution of the Net Settlement Fund.[1]  For the reasons set forth herein and in the accompanying Declaration of Michael McGuinness in Support of Motion for Authorization To Distribute Net Settlement Fund ("McGuinness Distribution Decl." or "McGuinness Distrib. Decl.") filed herewith, prepared on behalf of Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Claims Administrator"), Lead Plaintiff respectfully requests that the Court enter the proposed Distribution Order.

If entered by the Court, the Distribution Order would, among other things: (i) approve Epiq's administrative recommendations accepting and rejecting Claims submitted in the above-captioned action (the "Action"); (ii) authorize distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted; and (iii) approve Epiq's fees and expenses incurred in the administration of the settlement.

Pursuant to the Stipulation, Defendants have no interest in the relief sought by this motion.  *See* Stipulation ¶2.9 ("[I]t is not a claims-made settlement.").

## PROCEDURAL BACKGROUND

On August 11, 2020, the Court issued the Judgment Granting Final Approval of Settlement ("Final Approval Order") granting final approval to the $2,083,333.33 cash settlement between Lead Plaintiff, on behalf of the Class, and Defendants, under the terms set forth in the Stipulation, and dismissing the above-captioned action (the "Action") with prejudice. ECF No. 86.

As described in the McGuinness Distribution Declaration, Epiq, under Class Counsel's

---

[1]    Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; and (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated March 18, 2020 ("Stipulation"), ECF No. 58.

supervision, provided the requisite notice of the pendency and Settlement of the Action to potential Class Members, processed the Proof of Claim forms, calculated Recognized Loss amounts, and performed related work consistent with the Stipulation, and the Final Approval Order. *See generally* McGuinness Distrib. Decl.

Epiq has completed the processing of Claims, including Claims submitted after the July 30, 2020 Claims-submission deadline but postmarked or received on or before July 14, 2021, and related work. As a result, Class Counsel and the Claims Administrator are now prepared to distribute the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Allocation.

**ARGUMENT**

**I.     THE CLAIMS ADMINISTRATOR'S ADMINISTRATIVE DETERMINATIONS SHOULD BE APPROVED**

Pursuant to the Stipulation and Preliminary Approval Order, all Class Members wishing to obtain their *pro rata* share of the Net Settlement Fund were required to timely submit a completed Proof of Claim form with supporting documentation to Epiq, postmarked or received on or before the submission deadline of July 30, 2020. *See, e.g.*, Preliminary Approval Order at ¶17; Stipulation at ¶¶5.4-5.5.

As detailed in the accompanying declaration, Epiq received and reviewed all Claims submitted by potential Class Members. McGuinness Distrib. Decl. ¶¶9-20. Epiq prepared exhibits detailing: (i) all timely eligible Claims postmarked or received on or before the Claims submission deadline (McGuinness Distrib. Decl. ¶38, Ex. B-1); (ii) all late but otherwise eligible claims that were postmarked or received after the Claims submission deadline but on or before July 14, 2021 (McGuinness Distrib. Decl. ¶38, Ex. B-2); and (iii) all rejected Claims that were deemed ineligible through Epiq's deficiency process (McGuinness Distrib. Decl. ¶38, Ex. B-3).

3

### A.    Overview Of The Claims Administration Process

To avoid undue repetition, Lead Counsel respectfully refers the Court to the McGuinness Distribution Declaration filed herewith for a detailed description of the factual and procedural background of the claims review and administration process.

Briefly, Epiq sent 29,264 Notices and Proof of Claim and Release forms and received and processed 2,087 Claims. McGuinness Distrib. Decl. ¶¶3, 9, 15. The information from each Claim, including the claimant's name, address, taxpayer identification number or social security number, and the claimant's transactions listed therein, were entered into a computerized database maintained by Epiq. *Id.* at ¶11. Epiq reviewed all Claim Forms and supporting documentation to determine, among other things, whether each claimant had purchased or acquired Revolution Lighting securities during the Class Period and whether the claimant was in fact a Class Member or whether the claimant was an excluded person or a Class member who had requested exclusion. *Id.* at ¶12.

Epiq made substantial efforts to provide claimants with a fair opportunity to cure deficiencies in their Claims. As set forth in the McGuinness Distribution Declaration, Epiq sent a Notice of Incomplete Proof of Claim Submission ("Deficiency Notice") to claimants who submitted Claims by mail or email that Epiq determined contained deficiencies. *Id.* at ¶25. Such deficiencies include incomplete supporting documentation, a Claim form that did not indicate an eligible transaction, or missing signatures. *Id.* at ¶24. Epiq sent 435 Deficiency Notices to claimants in an effort to inform the claimants of the steps needed to remedy the deficiencies. *Id.* at ¶25. The Deficiency Notice informed the claimant that the appropriate information or documentary evidence needed to complete the Claim must be submitted within twenty (20) days from the date of the letter, or the Claim would be recommended for rejection to the extent the deficiency or ineligibility was not cured. *Id.*

Those who submitted Claims electronically were notified of their Claims' ineligibility or deficiency by email in a Transaction Report listing the data that was incorrect or incomplete. *Id.* at ¶27.

Epiq received and processed claimants' responses to the Deficiency Notices and Transaction Reports. *Id.* at ¶¶26, 28. If a claimant's response corrected the defects in the Claim, Epiq updated the database to reflect the change in the Claim's status. *Id.* at ¶¶26, 28. To date, Epiq received 8 requests from claimants for a review by the Court of the Claim determination made by Epiq as stated in the Deficiency Notice and Transaction Reports. *Id.* at ¶29. All 8 of these requests were resolved by the receipt of additional documentation from the claimants. *Id.*

**B.    Ineligible Claims Should Be Rejected**

Epiq has completed the processing of the Claims received through July 14, 2021 and recommends 1,308 Claims for rejection. *Id.* at ¶¶36-37; Ex. B-3 (schedule of all ineligible claimants). Most of the 1,308 Claims either have no Recognized Loss (839 Claims) or no eligible purchases/acquisitions during the Class Period (228 Claims). *Id.* at ¶37. The remainder of the ineligible claims were rejected because the Proof of Claim was withdrawn or voided (143 Claims), contained defects that were never cured (71 Claims), or were duplicative of another claim (27 Claims). *Id.* Lead Plaintiff respectfully requests that the Court approve Epiq's recommendation to reject the 1,308 Claims deemed ineligible.

**C.    Late Claims That Are Otherwise Valid Should Be Accepted**

Epiq has determined that 779 Claims should be accepted. *Id.* at ¶39. Of the 779 Claims received that are valid either in whole or in part, 749 were postmarked or received on or before the Claims submission deadline ("Timely Eligible Claims") and 30 were postmarked or received after the Claims submission deadline but on or before July 14, 2021 ("Late But Otherwise Eligible Claims" or "Late Claims"). McGuinness Distrib. Decl. ¶¶30, 39; Exs. B-1 & B-2. The

total Recognized Losses calculated pursuant to the Plan of Allocation for the Timely Eligible Claims is $25,348,788.08 and the total Recognized Losses for the Late Claims is $637,412.19. *Id.* at ¶39.  Epiq recommends, and Class Counsel agrees, that the Late Claims should be deemed timely and included in the Settlement distribution.  *See* McGuinness Distrib. Decl. ¶¶30, 38-39.

"[A] district court overseeing [a] settlement distribution has inherent power to accept late claims . . . ."  *In re Authentidate Holding Corp. Sec. Litig.*, No. 05 Civ. 5323 (LTS), 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013).  In determining whether to allow a late-submitted claim to a settlement, the Court "should examine the equities."  *In re Oxford Health Plans, Inc.*, 383 F. App'x 43, 45 (2d Cir. 2010).  "[T]here is an implicit recognition that late claims should ordinarily be considered in the administration of a settlement of a complex action." *Authentidate*, 2013 WL 324153, at *2.

The equities weigh in favor of accepting the Late But Otherwise Eligible Claims here. Epiq believes that no delay in the processing or distribution of the Net Settlement Fund has resulted from provisionally accepting the Late Claims.  *See* McGuinness Distrib. Decl. ¶30. Further, the Recognized Loss amount of the Late Claims is a very small percentage of the approximately $25,986,200.27 in total Recognized Losses for all 779 valid Claims.  *See id.* at ¶39.  Therefore, Lead Plaintiff respectfully requests that the Court approve Epiq's recommendation to include the 30 valid Late Claims in the Settlement distribution.

### D.  Claims Received After July 14, 2021 Should Be Rejected As Untimely

There must be a final cut-off date after which no more Claims may be accepted so that there may be a proportional distribution of the Net Settlement Fund without further delay and expense for the Class.  McGuinness Distrib. Decl. ¶¶30-31; *see In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648 (LAK) (RLE), 2004 WL 3670993, at *4 (S.D.N.Y. Nov. 17, 2004) ("In any class settlement, it is necessary to establish a cutoff date to bring closure to the action.").

Accordingly, Lead Plaintiff respectfully requests that the Court order that any Claim or any responses to Deficiency Notices or Transaction Reports received after July 14, 2021 be rejected as untimely.  *See* McGuinness Distrib. Decl. ¶31.

## II.    THE DISTRIBUTION OF THE NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS SHOULD BE APPROVED

Lead Plaintiff respectfully requests that the Court authorize the distribution of the Net Settlement Fund to the Class Members whose claims have been accepted by Epiq.  These Claims are listed in Exhibits B-1 to B-2.

The McGuinness Distribution Declaration sets forth a plan for distribution of the Net Settlement Fund in accordance with the Plan of Allocation.  Pursuant to the plan, Epiq will mail letters to Authorized Claimants whose payment amount is less than the $10.00 minimum check amount set forth in the Notice, advising them of the fact that their *pro rata* share of the Net Settlement Fund is below the minimum threshold for payment.  McGuinness Distrib. Decl. ¶43. Epiq will then distribute checks (or effectuate wire transfers where applicable), to all other Authorized Claimants whose *pro rata* share of the Net Settlement Fund amounts to a distribution of $10.00 or more.  *Id.* at ¶¶44-46.

To encourage Authorized Claimants to cash their distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, all checks for distribution should bear the notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF ISSUE DATE."  *Id.* at ¶45.

If any funds remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to contact claimants who have not cashed their payments, but no earlier than six (6) months after the initial distribution, the Claims Administrator should consult with Lead Counsel to determine if a redistribution of the remaining Net Settlement Fund to Class

7

members who cashed their initial distribution check and would receive a minimum of $10.00 is cost effective, after taking into consideration payment of any additional costs and expenses that would be associated with a redistribution.  These redistributions shall be repeated until it is no longer feasible to conduct any further distributions of the Net Settlement Fund.  Any *de minimis* balance that still remains in the Net Settlement Fund at that point shall be donated to the Investor Protection Trust, in accordance with the Stipulation.  Stipulation at ¶5.6.

## III.    PAYMENT OF EPIQ'S OUTSTANDING FEES AND EXPENSES FROM THE SETTLEMENT FUND SHOULD BE AUTHORIZED

The Court retained jurisdiction to consider an application for an award of fees and reimbursement of expenses relating to the Claims Administrator's implementation of the terms of the Stipulation.  Final Approval Order at ¶18.  Pursuant to the Stipulation, the Settlement Fund may be used to pay Notice and Administration Expenses, which include all expenses incurred in connection with distributing the Notices to the Class and the costs of the Claims Administrator, among other things.  *See* Stipulation at ¶¶1.23, 5.2.

Epiq was retained to supervise and administer the notice procedure and to process Claims in connection with the Settlement.  *See* Preliminary Approval Order at ¶7.  As Claims Administrator, Epiq was and is responsible for, among other things, printing and mailing copies of the Notice and Proof of Claim forms to Class Members, effecting publication of the Summary Notice of the Settlement, processing and reviewing the filed Claims, preparing the tax returns for the Settlement Fund, calculating the *pro rata* distribution amount by calculating each Authorized Claimant's percentage of the Net Settlement Fund in accordance with the Plan of Allocation, and distributing the Net Settlement Fund to accepted claimants.  *See generally* McGuinness Distrib. Decl.; Preliminary Approval Order at ¶¶7, 11-15; Stipulation at ¶¶1.3, 2.11, 5.1.

In connection with that work, Epiq has incurred a total of $209,974.44 in administrative

fees and expenses.  McGuinness Distrib. Decl. at ¶40; Ex. C (invoices).  To date, Epiq has received payment in the amount of $17,560 for its fees and expenses.  *See id.*  Accordingly, there is an outstanding balance of $192,414.44 payable to Epiq.  *Id.*  Lead Plaintiff respectfully requests that the Court approve Epiq's requested fees and expenses for its services.

## IV.    RETENTION OF PROOF OF CLAIM FORMS AND OTHER DOCUMENTS

Lead Plaintiff also requests that the Court permit Epiq to destroy any paper copies of the Proof of Claim forms and all related documentation one (1) year after the final distribution and electronic copies of the same one (1) year after all funds have been distributed.  *See* McGuinness Distrib. Decl. ¶50.

## V.    RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, Lead Plaintiff respectfully requests that the Court bar any further Claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and release and discharge from any and all claims arising out of the claims administration all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein or otherwise involved in the administration or taxation of the Settlement Fund.  *See* Stipulation ¶5.8.

**CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully submits that Lead Plaintiffs' Motion for Distribution of the Net Settlement Fund should be granted, and the [Proposed] Distribution Order should be entered.

Dated:  July 29, 2021                    Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:_____ */s/ Katherine M. Lenahan*

9

Katherine M. Lenahan

Katherine M. Lenahan
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 983-9331
E-mail: klenahan@faruqilaw.com

*Attorneys for Class Representative Fred Remer and
Class Counsel for the settlement Class*